I .WILLIAM F. KLINE, Jr., J. Pro Tem.
This is an appeal from a decision of the Office of Workers’ Compensation (OWC) finding “outlier” reimbursement due to a health care provider. For the reasons which follow, we affirm the judgment, in part, and remand for additional proceedings.
FACTS AND PROCEDURAL HISTORY
On March 13, 1998, Richard Guise, an employee of Johnson Bros. Corporation (JBC), was injured in a work-related accident. Mr. Guise was treated at Thibodaux Regional Medical Center (Thibodaux Regional) from March 13 to March 17, 1998, where he underwent approximately seven *432 hours of surgery to reduce an open, intra articular, comminuted, fracture of the right tibia and fibula, and a supracondylar-intercondylar fracture of the left distal femur. Because of Mr. Guise’s extensive injuries, numerous surgical implants were used to achieve internal fixation during a complicated emergency surgery, which was followed by a four-day hospital stay.
Mr. Guise’s hospital charges totaled approximately $43,000.00 at the time of his discharge. After submission of the hospital bill to Gallagher Bassett Services, Inc. (Gallagher), the workers’ compensation administrator for JBC, Thibodaux Regional received a payment of $6,448.60. This amount represented inpatient reimbursement for four days of hospitalization at the workers’ compensation per diem rate of $1,697.00, applicable to Thibodaux Regional under La. Admin. Code, Title 40, Part I., § 2505.
Subsequently, Oliver J. Bourgeois, III, nurse auditor for Thibodaux Regional, requested Gallagher make payment at the “outlier” rate of eighty-five (85%) percent, under La. Admin. Code, Title 40, Part I., § 2519(B). Upon receipt of this request, Gallagher retained GENEX Services, Inc. (GENEX), a medical auditing company, to review the request. Following its review, GENEX recommended to Gallagher that payment be made at the “outlier” rate, entitling Thibodaux Regional to an additional $29,398.03 payment. The recommendation was followed, and the hospital was paid $29,398.03 by Gallagher on or about May 18,1998. It was stipulated that Mike Swenson, a vice president of JBC, if called to testify, would have testified that the additional payment was made by Gallagher without the knowledge and consent of JBC.
[¡¡Thereafter, JBC brought this claim against Thibodaux Regional, Gallagher, and GENEX, contending that it is entitled to recover $29,398.03 in medical expenses “which were wrongfully recommended for payment by GENEX Services, ... as an outlier.”[2]
After trial of the matter, the OWC judge rendered judgment in favor of Thibodaux Regional, finding “outlier” status and dismissing the claim for reimbursement by JBC.[3] From this judgment, JBC appeals and makes the following assignments of error:
1. The Trial Judge erred in finding that Thibodaux Regional Medical Center met its burden of proof in showing outlier status (non-automatic) under Section 2519B. of Title 40 of the Louisiana Administrative Code providing in pertinent part as follows:
B. Appeal Procedures
Special reimbursement consideration will be given to cases that are atypical in nature due to case acuity causing unusually high charges when compared to the provider’s usual case mix. (emphasis added)
2. The Trial Court erred in finding that Thibodaux Regional Medical Center could legally meet its burden of proof *433 without medical testimony to establish case acuity.
3. The Trial Court erred to the extent it relied upon and characterized certain testimony of Oliver Bourgeois, a Nurse Auditor for Thibodaux Regional Medical Center, as expert medical testimony to establish case acuity.
REIMBURSEMENT OF MEDICAL EXPENSES
An employer owing workers’ compensation benefits has the duty to furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal. La. R.S. 23:1203(A). The OWC is required by La. R.S. 23:1034.2 to establish and promulgate a reimbursement schedule for drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal and due under the Workers’ Compensation Act, which is applicable to any person or corporation who renders such care, services, or treatment or provides such drugs or supplies to any person covered by workers’ compensation. La. R.S. 23:1034.2(A). The director is further required by La. R.S. 23:1034.2(B) to adopt rules Land regulations necessary to establish and implement such a schedule. Charges are limited by the reimbursement schedule to the mean of the usual and customary charges for such care, services, treatment, drugs and supplies. La. R.S. 23:1034.2(C). See also La. Admin. Code, Title 40, Part L, § 5101. Fees in excess of the reimbursement schedule are, ordinarily, not recoverable against the employee, employer, or workers’ compensation insurer. La. R.S. 23:1034(D).
Title 40 of the Louisiana Administrative Code contains the workers’ compensation reimbursement schedule. La. Admin. Code, Title 40, Part L, § 2505 et seq. With regard to reimbursement for inpatient hospital services, a per diem rate is set forth that varies by locality. La. Admin. Code, Title 40, Part I., § 2505. Additional payments are authorized in atypical cases that incur higher charges because of more serious medical conditions; these type of cases justifying higher reimbursements are referred to as “outliers.” See Manuel v. River Parish Disposal, Inc., 96-302, p. 8 (La.App. 5th Cir.10/1/96), 683 So.2d 791, 795-96. “Automatic outliers” are recognized by La. Admin. Code, Title 40, Part I., § 2519(A) for the following conditions: (1) AIDS, (2) acute myocardial infarction, and, (3) severe burns. These conditions are paid “at covered billed charges less a 15 percent discount.” La. Admin. Code, Title 40, Part L, § 2519(A). The determination of “outlier” status for medical conditions not listed in Paragraph (A) of Section 2519 is governed by the provision of Paragraph (B), which provides as follows:
Appeal Procedures. Special reimbursement consideration will be given to cases that are atypical in nature due to case acuity causing unusually high charges when compared to the provider’s usual case mix. This appeal process applies to workers’ compensation cases paid under the per diem reimbursement formula limiting the payment amount to the lesser of per diem or covered billed charges.
1. The following general criteria will be applied to determine when a case, originally paid at the per diem rate, may be appealed:
a. total charges for an inpatient hospital surgical admit are greater than or equal to $100,000;
*434 b. total charges for an inpatient hospital medical admit are greater than or equal to $75,000;
c. average per day charge for any case (inpatient hospital, rehabilitation, SNF, etc.) equates to 1.75 times the applicable per diem rate.
|s2. When a provider determines that a case falls within the appealable criteria, a request for review may be submitted to the carrier/self-insured employer.
3. If denied, a provider may then file a formal appeal with the Office of Workers’ Compensation using the Special Reimbursement Consideration Appeal Form (LDOL-WC-3000) (see 2519). Forms are available upon request from the Office of Workers’ Compensation at the address shown on the sample form. Procedures for filing an appeal and documentation required are provided on the form.
4. Final determination as to acceptance , of a case for special reimbursement rests solely with the [S]tate of Louisiana, Office of Workers’ Compensation.
5. If approved, the provider will be reimbursed at covered billed charges less a 15 percent discount.
6. The formula for calculation of the reimbursement amount for both automatic outliers and approved appeal cases is:
(Billed Charges) — (Noncovered Charges) = Covered Charges x 0.85 = Payment Amount
7. All workers’ compensation claims paid outside the per diem reimbursement method either as automatic outliers or as Special Reimbursement Consideration Appeal cases are subject to on-site bill audit. Bill audits are governed by the rules and procedures found in the Utilization Review Procedures Manual. Please refer to that manual for details.
(Emphasis added.)
Thibodaux Regional availed itself of the appeal process, seeking reimbursement of eighty-five percent of the covered billed charges (covered billed charges less fifteen percent discount), alleging that the Guise case was atypical in nature due to case acuity causing unusually high charges when compared to the provider’s usual case mix.[4] Thibodaux Regional asserts that, in accordance with La. Admin. Code, Title 40, Part I., § 2519(B)(1)(c), the average daily charge for Mr. Guise’s treatment was more than 1.75 times the applicable per diem rate of $1,697.00.
Ruling in favor of Thibodaux Regional, the OWC judge concluded in his written reasons, as follows, in pertinent part:
This Court finds Thibodaux Regional Medical Center has proven entitlement to outlier status. It is this type of case which was contemplated by the outlier provision of the Louisiana Administrative Code. This case is the exception to the rule rather than the norm. Allowing reimbursement at the eighty-five (85%) percent rate for a case such as this serves as a “safety valve” for medical providers in limited and severe cases which result in unusually high charges in comparison to the ^provider’s usual case mix. Therefore, this Court dismisses the claim of Johnson Brothers for repayment of the amount appropriately received by the Thibodaux Region *435 al Medical Center for treatment of Mr. Richard Guise.
Louisiana jurisprudence is clear that in workers’ compensation cases, as in other cases, the appellate court’s review is governed by the manifest error or clearly wrong standard. Freeman v. Poulan/Weed Eater, 93-1530, p. 4 (La.1/14/94), 630 So.2d 733, 737; Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992); Washington v. Lyons Specialty Company, 96-0263, p. 6 (La.App. 1st Cir.11/8/96), 683 So.2d 367, 372, writ denied, 96-2944 (La.1/31/97), 687 So.2d 408. A court of appeal may not set aside a hearing officer’s finding of fact in absence of “manifest error” or unless it is “clearly wrong.” Freeman v. Poulan/Weed Eater, 630 So.2d at 737; Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Washington v. Lyons Specialty Company, 683 So.2d at 372. The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one, after reviewing the record in its entirety. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882; Vargas v. Daniell Battery Manufacturing Company, Inc., 93-1249, p. 8 (La.App. 1st Cir.5/20/94), 636 So.2d 1194, 1198. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882; Rosell v. ESCO, 549 So.2d at 844; Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Vargas v. Daniell Battery Manufacturing Company, Inc., 636 So.2d at 1198.
BURDEN OF PROOF FOR “OUTLIER” STATUS
After a thorough review of the record, we are unable to find manifest error in the ruling of the OWC judge that “outlier” status was proven. The trial court ruled that the burden of proof for “outlier” status remained with the provider, Thibodaux Regional, in spite of its contention that this case arises as a claim for unjust enrichment under La. C.C. art. 2298 for which the petitioner, JBC, would have the burden to prove the elements necessary for recovery. We are unpersuaded by this argument.
|7The burden of proof to establish “outlier” status and the resulting entitlement to enhanced reimbursement is on the health care provider to prove that the case is atypical in nature due to case acuity causing unusually higher charges when compared to the provider’s usual case mix. See Gray Insurance Company v. St. Charles General Hospital, 96-1637, p. 5 (La.App. 1st Cir.6/20/97), 696 So.2d 577, 580. The fact that JBC is the petitioner seeking reimbursement of those funds, previously paid by its administrator, is not compelling.

SUFFICIENCY OF EVIDENCE

JBC also maintains on appeal that the testimony of the only witness called by Thibodaux Regional, a medical auditor, was insufficient to establish “case acuity.”
The charges of health care providers entitled to special reimbursement consideration are cases which “are atypical in nature due to case acuity causing unusually high charges when compared to the provider’s usual case mix.” La. Admin. Code, Title 40, Part I., § 2519(A). The statutory expression is without definition or punctuation to guide in its application.
*436 In Gray Insurance Company v. St. Charles General Hospital, 696 So.2d at 578-80, this court, in declining to find that the surgery was atypical in nature due to case acuity, did not discuss the comparison to its usual case mix. However, Gray did afford some guidance in holding: (1) that the provider had the burden of proof to show outlier status; (2) that “acuity” is interpreted as “acuteness” which in a medical sense means having a short and relatively severe course; (3) the test for reimbursement encompasses more than whether a surgery is typical when compared to other surgeries involving the same area of the body; and (4) “outliers” are statistical anomalies.
The OWC in Gray failed to make a determination as to either “case acuity” or “the provider’s usual case mix.” 696 So.2d at 579. Furthermore, the Gray court found the record contained no evidence of a “relatively severe course;” the medical records and testimony of the treating physician revealed only that the patient tolerated the surgical procedure “fairly typically” and that his inpatient care was “fairly routine.” Even though there was evidence of a surgical complication, the doctor testified that it was “fairly easily repaired.” Thus, the Gray provider was found to have failed in its burden of proof. 696 So.2d at 580.
| ^Although there may be a possibility of interpreting in a different manner that which is to be compared with the usual case mix, the fair reading leads us to conclude that the statute should be interpreted to wit: Special reimbursement consideration will be given to cases that are atypical (unusual) in nature when compared to the provider’s usual case mix or classification or types of patients treated by the provider. The atypical nature must be due to case acuity (acuteness) causing high charges.
In the instant case, the medical records of Thibodaux Regional were introduced into evidence without objection. The medical report of Dr. Neil J. Maki, the treating physician, states that Mr. Guise suffered “[s]evere injuries to both legs.” Dr. Maki summarized the patient’s condition and hospital treatment in his discharge report as follows, in pertinent part:
The patient is fifty-eight and has had fractures of the left distal femur and right ankle that necessitated the admission on March 13, 1998.[H]e had de-bridement and open reduction as well as application of external fixator for the fracture of the right ankle and the left supracondylar fracture, was treated with open reduction internal fixation using supracondylar nail as well as interfrag-mentary fixation. He had a course of gradual improvement although was non weight bearing. He was able to be up in a chair, helped with transfers, and was subsequently discharged to the rehabilitation unit on March 17 to continue with postoperative care.
The hospital records further reveal: that the surgery was performed on an emergency basis with implants used, costing approximately $22,798.40; the operating room charges for the surgery, in excess of seven hours, were $5,412.66; and, Mr. Guise also suffered an acute post-surgical hemorrhage requiring blood transfusions. The total hospital bill was approximately $43,000.00.
In addition to the medical records and reports submitted into evidence, Mr. Bourgeois testified on behalf of Thibodaux Regional relative to the provider’s claim for “outlier” status. At the time of the trial of this matter, Mr. Bourgeois had over twenty years experience as a nurse, seven years of which were as a medical auditor. Mr. Bourgeois testified that his position involved the comparison of medical *437 charges with medical records to verify the accuracy of the charges, and that he had personally been involved in the appeal of between twenty and thirty cases for approval of “outlier” status, all with success.
From the records and his nursing experience, Mr. Bourgeois, concluded that the Guise case met the test of “acuity” because both legs were involved; the bone was | sprotruding in the lower leg, comminuted or crushed, and there was an upper leg fracture. Mr. Guise, an asthmatic and a hypertension patient, was under anesthesia for over seven hours and experienced post hemorrhagic anemia requiring four units of blood.
JBC objected to the testimony of Mr. Bourgeois regarding the severity of the injury and urged that a medical expert should give that opinion. Whereupon, the court ruled that Mr. Bourgeois’ expertise was limited to that of a medical auditor; however, the court did not strike Mr. Bourgeois’ prior testimony.
In addition, Mr. Bourgeois gave extensive testimony regarding the hospital’s case mix and how the severity of individual cases is determined. Mr. Bourgeois testified that diagnosis summary worksheets are prepared when a patient is discharged or moved, as part of the patient record. Medical records employees enter all the diagnoses and procedures obtained from the doctor into the computer. From this information, an attestation sheet is produced, which the doctor acknowledges and which is later used for coding and billing purposes. The computer then generates, from the procedures and diagnoses entries, a “diagnosis-related group (DRG)” code number. The DRG weight system is used by the Medicare program and assigns a value to a particular diagnosis, based on factors such as treatment required, resource utilization, and severity. Reference is then made to a manual called the “DRG Optimizer,”[5] to obtain the weight assigned for the particular DRG code number.
Mr. Bourgeois testified that the computer-generated DRG number assigned to Mr. Guise was 210 (described in the DRG Optimizer as: “Hip & Femur Procedures Except Major Joint, Age > 17 With [Complications]”). The DRG Optimizer relative weight assigned for code 210 is 1.8265. Mr. Bourgeois testified that the relative weight assignments are used because they are correlated with acuity levels.
Mr. Bourgeois further testified concerning the hospital’s “case mix.”[6] He testified that the case managers at Thibodaux Regional maintain a current case mix index based on an average of one year prior to admissions, excluding newborns and rehabilitation |inpatients. The average case mix index for one year prior to Mr. Guise’s admission, on March 13, 1998, and the average case mix for the period six months before and six months after his admission, happened to be the same, namely 1.17. The average case mix for workers’ compensation cases calculated from September 13, 1997 to September 17, 1998 was 1.2596.
From these calculations, Mr. Bourgeois determined that the Guise case weight of 1.8265 exceeded the hospital’s usual case mix. He noted, additionally, that the comparison of costs for all cases having code 210 (surgical repair of femur) from 1997 to 1999 reflect that the Guise charges of ap *438 proximately $43,000.00 exceeded all others. Based on the medical records and his experience, Mr. Bourgeois concluded that the Guise case was atypical due to case acuity.
Our review of the record reveals a reasonable basis for the finding of the OWC judge. While the OWC was not favored with the testimony of Dr. Neil J. Maki or other medical experts to give the ultimate conclusion that the Guise case was atypical in nature due to case acuity; nevertheless, the court had access to the medical reports signed by Dr. Maki relative to the seven hour surgery, the procedures and the necessity for medical hardware and transfusions. Mr. Bourgeois, nurse and medical auditor, afforded the court perspective about the reasons he appealed for “outlier” status. Explanations were given by Mr. Bourgeois of the coding procedure from medical records, the determination of Diagnosis Related Group (DRG) classification, the weight assignment, and the presentation of patient records from August 13, 1998 to August 17, 1998 to determine case mix. JBC presented no contradictory evidence. Although an articulated conclusion of Dr. Maki may have been helpful, it is not deemed essential since other testimony and records were introduced to allow the OWC by inductive reasoning to conclude that the statutory requirements were satisfied. We are unable to find manifest error in the factual finding of the OWC that the Guise case was atypical in nature due to case acuity when compared to the provider’s usual case mix.

EXCESSIVE HOSPITAL CHARGES

JBC has also raised the issue that the charges billed by Thibodaux Regional were excessive. On this issue, Mr. Bourgeois stated that the hospital has a master or standard billing rate for all patients treated. Workers’ compensation cases, which | ^ constitute a small percentage of the total cases, are not charged differently from others; although, some insurance companies have contracts that allow them a reduction percentage. Thibodaux Regional is a non-profit hospital but has to compete for patients with area hospitals. Mr. Bourgeois testified that the hospital billing prices are in line with other area hospitals, such as, Terrebonne General Medical Center in Houma and St. Anne’s Hospital in Raceland.
Mr. Bourgeois further testified that there are several factors that influence billing rates: the fact that indigent patients must be treated and those costs must be absorbed; the insurance companies who contract for services would be lost if billing rates were excessive; there is area hospital competition; and the hospital is only able to collect approximately fifty percent of billed charges (thirty-seven percent overall and sixty-nine percent on workers’ compensation cases).
With regard to the markup on implant devices, Mr. Bourgeois stated that the charged amount is based on acquisition cost plus mark-up. The computer system automatically figures the billing charges for all patients. A majority of the charges in the Guise case is made up of fifty-five items of hardware that went into his leg(s). The hospital’s cost for this hardware was $6,462.67, but it was billed at $22,798.40, an almost 300% mark-up.[7] Mr. Bourgeois admitted that he would not be surprised at a 500% mark-up in some instances.
According to Mr. Bourgeois, the hospital has a standard mark-up on the cost of *439 items. Charges are influenced by the previous enumerated factors: non-profit status, collection rate, competition from other hospitals, insurance company contracts, and obligation to provide services for indigents.
Under La. R.S. 23:1291(B)(10), the OWC is charged with requiring “the use of appropriate procedures, including a utilization review process that establishes standards of review, for determining the necessity, advisability, and cost of proposed or already performed hospital care or services, medical or surgical treatment, or any nonmedical treatment recognized by the laws of this state as legal, and to resolve disputes over the necessity, advisability, and cost of same.” This is a duty that is separate and apart from Lathe application of the reimbursement schedule, which is required by La. R.S. 23:1291(B)(9). The court in Manuel v. River Parish Disposal, Inc., 683 So.2d at 795, held that La. R.S. 23:1291(B) contemplates that health care charges be reasonable and that the OWC is empowered, through the hearing officer, to determine whether the actual charges are reasonable.
We further find that the integrity of the process is compromised by the unbridled, unilateral assignment of charges even though “outlier” status was established. A substantial cause of the regulation expressed in La. Admin. Code, Title 40, Part L, § 5101 is to limit to the mean of the usual and customary charge all fees for medical services, supplies, and other non-medical services delivered to workers’ compensation claimants.
It is uncontradicted that the hardware used during the Guise surgery was billed at an almost 300% markup. By comparison, La. Admin. Code, Title 40, Part I., § 5115, entitled “Surgery Guidelines” provides under Subsection (15), entitled “Plastic and Metallic Implants,” that those plastic and metallic implants supplied by the physician are to be reimbursed at invoice cost plus twenty percent. While we were not cited to any corresponding provision applicable to implants supplied by the hospital, and our research did not reveal any, we believe this provision is indicative of a reasonable cost and mark-up for these surgical supplies and should be applied regardless of the identity of the supplier.
While the OWC apparently relied on the testimony of Mr. Bourgeois that the charges were made pursuant to standard billing practices, applied uniformly, the OWC failed to specifically evaluate the outlier charges as to reasonableness. Instead the OWC equated the uniformity of Thibo-daux Regional’s billing practices with reasonableness of the charges, rather than reviewing the charges in this case for actual reasonableness. While we are mindful of the need for health care providers to remain viable in spite of the reality factors of low collection rates, of the obligation to indigents, and of competition, the rationale of La. R.S. 23:1034.2 and Title 40 of the Louisiana Administrative Code is undermined without guidelines or specific determinations of reasonableness of costs.
11sTo the extent that the OWC failed to specifically evaluate the reasonableness of the charges of the health care provider in accordance with La. R.S. 23:1291, he erred. We therefore remand the matter to the OWC for a determination of the reasonableness of the hospital charges in accordance with La. R.S. 23:1291.
CONCLUSION
For the reasons assigned herein, the judgment of the OWC is affirmed in part, and remanded for further proceedings con *440 sistent with the foregoing; each party to bear its own costs of this proceeding.
AFFIRMED IN PART; REMANDED.

. On March 11, 1999, JBC filed a disputed claim form with the OWC seeking reimbursement for medical expenses paid "which were wrongfully recommended for payment by GE-NEX... as an outlier JBC's cause of action as to GENEX and Gallagher, who actually made the payment to Thibodaux Regional, was negligence in the performance of their duties. JBC argued that Thibodaux Regional had been unjustly enriched by the receipt of funds that were not owed, as the charges were not entitled to outlier status.

. Prior to trial, Gallagher and GENEX settled all claims with JBC, leaving Thibodaux as the remaining defendant on a claim of unjust enrichment.

. The OWC is authorized to decide a dispute between a health care provider and the employee, employer, or workers' compensation insurer, in the same manner and subject to the same procedures as established for dispute resolution of claims for workers’ compensation benefits. La. R.S. 23:1034.2(F).

. The "DRG Optimizer” is a publication of St. Anthony Publishing Company, a major publishing company for Medicare-related data.

. The DRG Optimizer, by glossary, defines "case mix" as the "classifications or types of patients treated by a hospital.” "Case mix index” is defined as the "sum of each relative weight of each patient's DRG in a population divided by the number of patients in the population.”

. It is interesting to note that reimbursement for the four-day stay at the allowable per diem rate of $1,697.00 per day would only amount to $6,788.00, barely covering the cost of the implants placed in Mr. Guise.