11 DREW, J.
The City of Shreveport (“City”) appealed from a judgment of the Office of Workers’ Compensation (“OWC”), District 1-W, the Hon. Larry Butler presiding,[1] awarding Lifecare Hospital an 85% rate of reimbursement for the treatment of a critically injured city employee. We affirm.
FACTS
The facts are undisputed and were stipulated by the parties. Mr. Alvin Cox was an employee of the City of Shreveport. On August 23, 2002, Cox was working for the City, when a man approached and shot him in the head. Neither the identity of the assailant nor his motive were evident from this record. Critically injured in the attack, Cox was transported to LSU Medical Center for emergency care.
On September 6, 2002, LSU Medical Center transferred Cox to Lifecare Hospital in Shreveport for further care. He remained at Lifecare until his discharge on November 27, 2002. While a patient at Lifecare, Cox incurred the following medical expenses:
Date Charges
09/06/02-09/30/02 $150,341.05
10/01/02-10/31/02 $ 77,989.37
11/01/02-11/27/02 $ 47,119.30
Lifecare billed the City through its third-party administrator, FARA Health Care Management (“FARA”), 85% of each charge pursuant to its interpretation of the applicable workers’ compensation reimbursement regulation. Lifecare calculated the reimbursement based on the 85% rate | ^allowed for patients whose cases are “atypical” and who incur unusually high charges compared to the hospital’s usual case mix. Such a case is also called an “outlier.”
The City, through FARA, paid Lifecare after each month of treatment. For Cox’s treatment in September, the City paid the hospital at the 85% atypical rate but refused to pay at the higher rate for the treatment provided in October and November, instead, paying the hospital at the regular reimbursement rate of $1,198.00 per day specified by the reimbursement regulations. The City argued that the reduced reimbursement rate applied to the charges for October and November because, after the month of September, Cox was no longer an atypical patient within the meaning of the reimbursement regulations.
Lifecare made a special reimbursement consideration appeal to the OWC, requesting that office provide a recommendation in the dispute. On September 9, 2003, the OWC issued a recommendation that Life-care be reimbursed at the atypical 85% rate because of the severity of Cox’s injuries and the extensive treatment by the hospital. The OWC based its ruling on LAC 40:I:2511(A) and specified that an aggrieved party could file a disputed claim for compensation.
*839 The City refused to pay the increased rate as the OWC recommended. On October 3, 2003, the City filed a disputed claim for compensation with the OWC, seeking a final resolution of the issue. Lifecare responded with a reconventional demand seeking reimbursement for $49,919.31, the |sdifference between the amount paid by the City and the amount billed by Life-care.
The hospital also asked for statutory penalties and attorney fees against the City. In response to the penalty and attorney fee demand, the City filed exceptions of no cause and no right of action. Penalties and attorney fees are not at issue in this appeal.
Both parties subsequently moved for summary judgment and relied on their stipulation of facts. The City stipulated that:
• during the first month of his treatment at Lifecare, September 6, 2002 to September 30, 2002, the City’s employee/Lifecare’s patient, Alvin Cox, was “atypical in nature due to case acuity causing unusually high charges compared to [Lifecare’s] usual case mix”;
• Lifecare’s total charges for Alvin Cox’s medical treatment were greater than $75,000.00 and, therefore, Lifecare was entitled to be paid at the special reimbursement rate provided in Section 2519(B) of the Louisiana Workers’ Compensation Hospital Reimbursement Schedule for the September 6 through 30, 2002 period; and
• the City, through FARA, did pay Life-care accordingly.
Lifecare stipulated that after September 2002 and for the remainder of his stay at Lifecare, the patient, Alvin Cox, because of his improved condition, no longer was “atypical” as compared to Lifecare’s usual case mix. In addition, Lifecare submitted in support of its motion the opinion of the OWC and a letter from Keith Cox, Director of “CED” at Lifecare.[2] For |4its motion, the City did not introduce any evidence other than the stipulation of facts.
After brief argument, the OWC granted Lifecare’s motion and awarded the hospital reimbursement for all of Cox’s treatment at the 85% rate, but denied the hospital’s demand for penalties and attorney fees. The City appealed.[3]
*840 DISCUSSION
The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine issue of material fact. Brown v. International Paper Co., 38,892 (La.App. 2d Cir.9/22/04), 882 So.2d 1228, writ denied, 2004-2865 (La.1/28/05), 893 So.2d 78. Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except certain domestic actions; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). The motion should be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with |Rthe affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). The burden of proof remains with the mover; however, if the mover will not bear the burden of proof at trial, then the mover may merely point out to the court the absence of factual support for one or more elements essential to the plaintiffs claim. The burden then shifts to the plaintiff to present evidence demonstrating that genuine issues of material fact remain. La. C.C.P. art. 966(C)(2). Appellate review of the grant or denial of summary judgment is de novo. Jones v. Estate of Santiago, 2003-1424 (La.4/14/04), 870 So.2d 1002.
The City has not challenged the underlying amounts of the bills from Lifecare under La. R.S. 23:1291(B)(10); the City’s only argument is that the OWC erred in ordering it to reimburse the charges at the higher rate. The instant dispute concerns the interpretation and application of the Louisiana Workers’ Compensation Hospital Reimbursement Regulations promulgated by the OWC in accordance with La. R.S. 23:1034.2, which provides, in part:
A. The director of the office of workers’ compensation administration shall establish and promulgate a reimbursement schedule for drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal and due under the Workers’ Compensation Act and applicable to any person or corporation who renders such care, services, or treatment or provides such drugs or supplies to any person covered by Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950.
B. The director shall adopt, in accordance with the Administrative Procedure Act, rules and regulations necessary to establish and implement a reimbursement schedule for such care, services, treatment, drugs, and supplies.
|fiC. (1) The reimbursement schedule shall include charges limited to the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies. Any necessary adjustments to the reimbursement schedule adopted and established in accordance with the provisions of this Section may be made annually.
[[Image here]]
D. Fees in excess of the reimbursement schedule shall not be recoverable against the employee, employer, or workers’ compensation insurer.
[[Image here]]
F. (1) Should a dispute arise between a health care provider and the employee, *841 employer, or workers’ compensation insurer, either party may submit the dispute to the office in the same manner and subject to the same procedures as established for dispute resolution of claims for workers’ compensation benefits.
[[Image here]]
The applicable rules are found in the Louisiana Administrative Code (“LAC”). The typical case is provided for in LAC 40:1:2505, which states, in part:
A. Reimbursement for inpatient hospital services will be limited to the lesser of covered billed charges or the per diem amount. The per diem rate assigned to the Standard Metropolitan Statistical Area in which the services are rendered will be applied to inpatient days by type of service, either medical or surgical.* The reimbursement amount will be reduced by charges for noncovered items and services.
NOTE: *The diagnosis/procedure code requiring the greatest resource consumption (severity) should be used to assign the correct category.
B. Using the following Per Diem Rate Schedule, the formula for calculating payment amount is:
Per Diem Rate x Inpatient Days = per Diem Amount
|71. If billed charges > per diem amount, pay per diem amount less noncovered charges.
2. If billed charges < per diem amount, pay billed charges less non-covered charges.
Per Diem Rate Schedule
SMSA Medical per Diem Surgical per Diem
Shreveport $1198 $1629
The City argued that the $1,198 daily reimbursement rate specified by this rule was the appropriate rate. The hospital urged, and the OWC concluded, that this case falls under LAC 40:1:2519, which provides:
A. Automatic Outliers. Inpatient hospital acute care services falling within certain diagnosis code ranges will be reimbursed outside the normal per diem reimbursement method. These atypical admissions will be paid at covered billed charges less a 15 percent discount. Conditions requiring acute care inpatient hospital services that are work-related and are recognized as “automatic outliers” are:
1. AIDS: ICD-9 Diagnosis Codes 042-044;
2. Acute Myocardial Infarction: ICD-9 Diagnosis Code 410; and
3. Severe Burns: ICD-9 Diagnosis Code 949.
B. Appeal Procedures. Special reimbursement consideration will be given to cases that are atypical in nature due to case acuity causing unusually high charges when compared to the provider’s usual case mix. This appeal process applies to workers’ compensation cases paid under the per diem reimbursement formula limiting the payment amount to the lesser of per diem or covered billed charges.
1. The following general criteria will be applied to determine when a case, originally paid at the per diem rate, may be appealed:
a. total charges for an inpatient hospital surgical admit are greater than or equal to $100,000;
|sb. total charges for an inpatient hospital medical admit are greater than or equal to $75,000;
c. average per day charge for any case (inpatient hospital, rehabilitation, SNF, etc.) equates to 1.75 times the applicable per diem rate.
*842 2. When a provider determines that a case falls within the appealable criteria, a request for review may be submitted to the carrier/self-insured employer.
3. If denied, a provider may then file a formal appeal with the Office of Workers’ Compensation using the Special Reimbursement Consideration Appeal Form (LDOL-WC-3000) (see § 2519). Forms are available upon request from the Office of Workers’ Compensation at the address shown on the sample form. Procedures for filing an appeal and documentation required are provided on the form.
4. Final determination as to acceptance of a case for special reimbursement rests solely with the state of Louisiana, Office of Workers’ Compensation.
5. If approved, the provider will be reimbursed at covered billed charges less a 15 percent discount.
6. The formula for calculation of the reimbursement amount for both automatic outliers and approved appeal cases is:
(Billed Charges)-(Noncovered Charges) = Covered Charges x 0.85 = Payment Amount
7. All workers’ compensation claims paid outside the per diem reimbursement method either as automatic outliers or as Special Reimbursement Consideration Appeal cases are subject to on-site bill audit. Bill audits are governed by the rules and procedures found in the Utilization Review Procedures Manual. Please refer to that manual for details.
|flCox’s condition did not fall under one of the “automatic outliers,” so Lifeeare submitted its bills to the City under LAC 40:I:2519(B). Under section (B)(1)(b) of the rule, Cox’s “total charges for an inpatient hospital medical admit” exceeded $75,000.00, so his case was subject to the appeal procedure provided in that section. Because the City denied additional reimbursement, the hospital then followed LAC 40:I:2519(B)(3) by filing a formal appeal of the decision with the OWC.
We observe again that LAC 40:I:2519(B)(4) provides:
4. Final determination as to acceptance of a case for special reimbursement rests solely with the state of Louisiana, Office of Workers’ Compensation.
This provision must be harmonized with La. R.S. 23:1034.2(F), which specifies that a reimbursement dispute may be submitted to the OWC in the same manner as a dispute for compensation benefits. We construe the rule and the statute together to mean that the OWC is the agency responsible for resolving these disputes. The OWC’s opinion in the special reimbursement consideration appeal stated that if “any party disagrees with this recommendation, a formal dispute may be filed with the appropriate hearing office by filing an LDOL-WC-1008, Disputed Claim for Compensation Form.” We agree with the OWC’s interpretation of its rule allowing the formal institution of a dispute in accordance with La. R.S. 23:1034.2(F) after the agency makes an initial determination under LAC 40:I:2519(B)(4).
The health care provider has the burden of proving that a particular case is “atypical in nature due to case acuity causing unusually high charges when compared to the provider’s usual case mix.” LAC 40:I:2519(B). Gray Ins. Co. v. St. Charles General Hospital, 1996-1637 (La.App. 1st Cir.6/20/97), 696 So.2d 577. See also, Johnson Brothers Corporation v. Thibodaux Regional Medical Center, 2000-1673 (La.App. 1st Cir.9/28/01), 809 So.2d 430. As in Gray, we assume that *843 the intended meaning of “acuity” is “acuteness”; we construe this to mean “severity.” In this case, Lifecare stipulated that after September 2002, Cox was not atypical due to his condition. This stipulation describes Cox as atypical, not his “case” or “condition.” We construe this to mean that after September, Cox no longer required that level of intense care that he required in September.
LAC 40:I:2519(B) applies by its terms to those “cases” that are atypical due to case acuity causing unusually high charges. In light of the use of the term “cases,” we interpret the rule to mean that the entire cost of the treatment of the patient, with certain limitations, is the critical factor to determine if the patient’s case is an “outlier.” So long as the provision of health care for a covered injury or illness consists of a single continuous course of treatment, that course of treatment constitutes a single “case” within the meaning of the rule,[4] and the total cost of that treatment is the appropriate element to include in the outlier analysis. The parties stipulated that the total bill from Lifecare was $275,449.72, and that sum is well over the threshold needed to make this case an appealable outlier under LAC 40:1:2519.
InThe city’s argument that Lifecare did not sustain its burden of proving that the injured worker was atypical based on the hospital’s case mix and case acuity during October and November is without merit. The city initially paid the 85% atypical rate because treatment for the injured man’s catastrophic injuries qualified.
It is the entire cost of the case, not the progress of the patient’s medical condition, that is the critical factor under this rule. The high charge in this case was due to the acuteness of Cox’s injury. Accordingly, the hospital is entitled to be reimbursed at the 85% rate under LAC 40:1:2519.
CONCLUSION
The judgment of the OWC is AFFIRMED. Appeal costs of $118.50 are assessed against the City of Shreveport.

. This information is provided, and this opinion is published, per La. R.S. 23:1310.5(F).

. Keith Cox stated in his letter, which was unsworn and not in the form of an affidavit, that Lifecare's usual case mix carried an acuity value of 1.9227. The letter did not further explain the meaning of this value or how it was calculated. [See Johnson Brothers Corp., v. Thibodanx Reg. Med. Ctr., 2000-1673 (La.App. 1st Cir.9/28/01), 809 So.2d 430, for what may be the explanation of these figures.] The letter stated that the acuity value for Mr. Alvin Cox’s case had a relative weight of 15.9677, owing to the unusually high charges for his treatment for conditions that included, among other things, respiratory failure and ventilator dependence with tracheotomy, pseudomonal pneumonia, malnutrition, traumatic brain injury, visual acuity problems, left extremity weakness and right upper extremity flaccidity. Attached to the letter was a bar graph of the relative weights of the acuity rating of the treatment of four workers' compensation patients at Lifecare in 2002. The first three had acuity weights of 3.6936, 1.0647, and 1.0099; Cox’s case was again weighted at 15.9677. Also attached was a list captioned "Diagnosis and Surgical Procedures Attachment" listing a series of diagnoses of Mr. Alvin Cox’s health problems due to the gunshot wound and a list of several procedures performed by the hospital.
In deciding this case, we do not rely on the unsworn letter and accompanying given weight in determining whether or not there is a genuine issue of material fact. See Strong’s Plumbing, Inc. v. Leon Angel Constructors, Inc., 35,105 (La.App.2d Cir.10/12/01), 796 So.2d 926.

. The City originally applied for supervisory writs which this court denied on October 14, 2004, because the judgment was an appeal-able judgment. The City then took a suspen- *840 sive appeal which, although filed outside the applicable period for suspensive appeals considering the original date of mailing of notice of judgment, is nevertheless timely as a devol-utive appeal.

. Because Cox’s treatment consisted of a continuous hospital stay, we are not called upon to interpret the rule in light of more discontinuous treatment or multiple injuries.