DANIEL L. DYSART, Judge.
Lin this worker’s compensation matter, plaintiff-appellant, Crescent City Surgical Centre, L.L.C. (“Crescent City”), appeals the denial of its claim for special reimbursement pursuant to the Louisiana Administrative Code, Title 40, Part I, § 2505. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
Byron Mitchell injured his back on April 3, 2007, during the course and scope of his employment with Beverly Industries, L.L.C. He received treatment thereafter, ultimately undergoing a laminectomy and three-level lumbar fusion three years later, on July 7, 2011 at Crescent City Surgical Centre, for which Mr. Mitchell was hospitalized for three days.
Beverly Industries’ worker’s compensation insurer, The Gray Insurance Company (“Gray”), paid the per diem for Mr. Mitchell’s surgery as set forth in the Louisiana Reimbursement Schedule, but denied Crescent City’s claim for special reimbursement consideration. Crescent City appealed to the Office of Workers’ Compensation (“OWC”), and by letter dated July 27, 2012, the OWC Medical ^Services Director recommended reimbursement for the implants used in Mr. Mitchell’s surgery, plus twenty percent, but denied the request for special reimbursement consideration on the basis that “the documentation does not satisfy the outlier criteria for recommendation.”
Crescent City then filed a Disputed Claim for Compensation with the OWC, seeking reimbursement for the full amount of Crescent City’s charges for Mr. Mitchell’s surgery ($179,800.27).[1] A trial on the merits was held on December 19, 2012, and judgment was rendered on December 23, 2013. The OWC judge ruled in favor of Gray, finding that Crescent City was *1256 “not entitled to special reimbursement consideration under L.A.C. 40:2519(B) because it failed to carry its burden that Mr. Mitchell’s case was atypical in nature due to case acuity causing unusually high charges when compared to the provider’s usual case mix.” In her reasons for judgment, the OWC judge noted:
Mr. Mitchell’s condition was neither acute nor of an emergency nature. He had waited for over two years for this surgery. Dr. Voorhies testified that Mr. Mitchell’s surgery and in patient stay was for the. same amount of time a similar case without any complications would have taken in a traditional hospital setting that handles this type of surgery. Dr. Voorhies confirmed that Mr. Mitchell’s surgery did not involve any complications, and that the patient had a good result.... The hospital failed to demonstrate that Mr. Mitchell’s essentially ordinary, non-emergency and successful |ssurgery or care would entitle them to special reimbursement consideration under L.A.C. 40:2519(B).
Crescent City timely appealed this judgment.

Standard of Review

It is well-settled that, “[i]n worker’s compensation cases, the appropriate standard of review to be applied by the appellate court to the OWC’s findings of fact is the [‘]manifest error-clearly wrong’ standard.” Tulane Univ. Hosp. & Clinic v. Lockheed Martin Corp., 11-0179, p. 3 (La.App. 4 Cir. 6/29/11), 70 So.3d 988, 990, quoting Dean v. Southmark Construction, 03-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117. As a reviewing court, we are not to decide whether the fact finder “was right or wrong, but whether the fact finder’s conclusion was a reasonable one.” Hahn v. X-Cel Air Conditioning, Inc., 12-0236, p. 4 (La.App. 4 Cir. 1/9/13), 108 So.3d 262, 266, citing Bell v. Mid City Printers, Inc., 2010-0818, p. 7 (La.App. 4 Cir. 12/22/10), 54 So.3d 1226, 1232. Accordingly, “if the evidence contained in the record on appeal supports the factual determinations of the trier of fact, we are required to affirm the findings.” Id., 12-0236, p. 5,108 So.3d at 266.
This Court has recognized that, “[w]hen legal error interdicts the fact-finding process in a workers’ compensation proceeding, the de novo, rather than the manifest error, standard of review applies.” MacFarlane v. Schneider Nat. Bulk Carriers, Inc., 07-1386, p. 3 (La.App. 4 Cir. 4/30/08), 984 So.2d 185, 188, citing Brantley v. Delta Ridge Implement, Inc., 41,190, p. 8 (La.App. 2 Cir. 6/28/06), 935 So.2d 308, 314. The MacFarlane Court also noted that “[t]he interpretation |4of statutes pertaining to workers’ compensation is a question of law and warrants a de novo review to determine if the ruling was legally correct.” Id., quoting Lirette v. Patterson Services, Inc., 05-2654, p. 4 (La.App. 1 Cir. 11/17/06), 951 So.2d 223, 226.
In the instant matter, we do not find any legal error on the part of the OWC judge which “interdict[ed] the fact-finding process” such that a de novo review of the record is necessary. Accordingly, we apply the manifest-error standard of review.[2] And, as will be discussed more fully herein, we find no we find no error in the OWC court’s judgment.
DISCUSSION
Under our comprehensive worker’s compensation system, an employer is responsi *1257 ble for the payment of “all necessary drugs, supplies, hospital care and services, medical and surgical treatment” of its employees who are injured in the course and scope of its employment. See Authement v. Shappert Engineering, 02-1631, p. 8 (La.2/25/08), 840 So.2d 1181, 1187; La. R.S. 23:1203 A. Our worker’s compensation laws provide for the reimbursement of those expenses by the employer, and under La. R.S. 23:1034.2 A and B, the director of the OWC is to “establish and promulgate a reimbursement schedule for drugs, supplies, hospital care and services, medical and surgical treatment” and “to adopt, in accordance with the Administrative Procedure Act, rules and regulations necessary to establish Land implement a reimbursement schedule for such care, services, treatment, drugs, and supplies.”
The statute further provides that charges are “limited to the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies.” La. R.S. 23:1034.2 C. “Fees in excess of the reimbursement schedule shall not be recoverable against the employee, employer, or workers’ compensation insurer.” La. R.S. 23:1034.2 D.
The hospital inpatient reimbursement schedule is set forth in Louisiana Administrative Code (the “Code”), Title 40, Part I, § 2505, which provides that “[rjeimbursement for inpatient hospital services will be limited to the lesser of covered billed charges or the per diem amount.” LAC 40:1:2505 A. The per diem amounts vary by locality and, for the New Orleans area, the rate is $1186 for medical services and $2059 for surgical services. LAC 40:1:2505 B(l)(b).
The Code also provides for “special reimbursement for medical cases that are ‘routliers.’ ” Winn-Dixie Louisiana v. Physicians Surgical Specialty Hosp., 13-2680, p. 1, n. 1 (La.2/21/14), 156 So.3d 1129, 1130. Two types of “outliers” are recognized by the Code: (1) automatic outliers — those “[cjonditions requiring acute care inpatient hospital services that are work related” pursuant to LAC 40:1:2519 A,[3] and (2) those “cases that are atypical in nature due to case acuity causing unusually high charges when compared to the provider’s usual case mix.” LAC 40:1:2519 B.
|6A healthcare provider who is paid on a per diem basis may appeal for special reimbursement consideration when (1) the “[tjotal charges for an inpatient hospital surgical admit are greater than or equal to $100,000,” (2) the “[tjotal charges for an inpatient hospital medical admit are greater than or equal to $75,000” or (3) the “[ajverage per day charge for any case (inpatient hospital, rehabilitation, SNF, etc.) equates to 1.75 times the applicable per diem rate.” LAC 40:1:2519 B(1).[4] See also, Lakeview Regional Med. Ctr. v. Washington Parish Sch. Bd., 13-1934, p. 5 (La.App. 1 Cir. 7/17/14), 152 So.3d 957, 960 (“[ojther cases, after an appeal process, may be reimbursed as outliers at 85% if they are atypical in nature due to case acuity causing unusually high charges when compared to the provider’s usual ease mix.”).
In this appeal, Crescent City maintains that the OWC judge erred in finding that it failed to meet its burden of proving entitlement to special reimbursement of the expenses incurred in Mr. Mitchell’s surgery. It contends that Mr. Mitchell’s case falls within LAC 40:1:2519 B in that Mr. Mitchell’s surgery and hospitalization *1258 were “atypical in nature due to case acuity causing unusually high charges when compared to the provider’s usual case mix.” While there are few cases which address this statute, and none from this circuit, we find Crescent City’s interpretation of LAC 40:1:2519 B to be misplaced. We agree with the OWC judge that Crescent City is not entitled to special outlier reimbursement.
|7As a number of cases recognize, the term “acuity,” as used in LAC 40:1:2519 B, has never been defined. One such case, the most recent case to address LAC 40:1:2519 B, is Lakeview Regional,[5] In that case, an employee suffered a work-related injury, received an epidural steroid injection, following which, she experienced shortness of breath and tightness in her chest. She was hospitalized, where it was discovered that she had a pulmonary embolism for which she received treatment. When the hospital was reimbursed only on a per diem basis, it filed suit, seeking special reimbursement consideration. Noting that the hospital had the burden of proving “outlier status, so as to qualify for payments in excess of the surgical per diem” Id., 13-1934, p. 5, 152 So.3d at 960, the First Circuit agreed with the worker’s compensation judge that the hospital failed to meet its burden.
The Lakeview Regional court considered the testimony of various witnesses regarding the employee’s particular hospitalization, including: a financial manager for the hospital who testified that the employee’s stay was 1.2 times the average of all inpatient stay that year; a CPA and management consultant who testified that, for patients with disorders of circulatory systems with major complications and co-morbidities, the average case mix index for the hospital was 1.29, whereas the employee’s case mix was 1.67 (or “30% greater than the average of all cases.... that year”); a medical review expert who testified that the employee’s “charges |swere approximately $2000 higher than the average cost for those cases.” Id., 131934, pp. 6-7, 152 So.3d at 961.
The First Circuit noted that the employee’s treating physician testified that her treatment was standard (albeit atypical for a woman of the employee’s young age) and that the standard of care she received (including work-ups to determine whether she was having cardiac or pulmonary issues) was typical. The court then held that the evidence did not “establish that [the employee’s] case was atypical due to case acuity, since nothing supports a finding that her case was a short and relatively severe course of medical treatment.” Id., p. 10, 152 So.3d at 963. (Emphasis added).
The same reasoning was applied to the earlier decisions of Gray Ins. Co. v. St. Charles Gen. Hosp., 96-1637 (La.App. 1 Cir. 6/20/97), 696 So.2d 577 and Winn-Dixie Louisiana v. HCA Mgmt. Servs., L.P., 10-2205 (La.App. 1 Cir. 6/10/11), 68 So.3d 1187, as noted by the Lakeview Regional court.
In Gray, an employee underwent an anterior lumbar fusion, which was paid by the employer’s insurer on a per diem basis. The hospital sought special reimbursement consideration which was approved by the OWC. The basis of the hearing officer’s decision was that the hospital had successfully proven that the “surgical procedure was ‘atypical in nature when compared to similar procedures performed utilizing the posterior approach’ and that the provision of an orthopedic brace ‘resulted in a high resource consumption not always typical to *1259 lumbar | ¡¡surgery cases.’ ” Gray, 96-1637, 696 So.2d at 579. The insurer appealed that ruling.
The First Circuit, noting that the test for special reimbursement “encompasses more than whether a surgery is typical when compared to other surgeries involving the same area of the body,” found that the hospital was not entitled to such reimbursement. Id., 696 So.2d at 579. The Gray court opined that the drafters of the Code intended for the term “acuity” within LAC 40:1:2519 B to mean ‘“acuteness”’ which, in a medical sense, means having a short and relatively severe course. Id. The court found “nothing acute about” the employee’s case, given his surgeon’s testimony that he “tolerated the surgical procedure ‘fairly typically,’ and his inpatient care was ‘fairly routine.’ ” Id., 696 So.2d at 580. Even though the employee suffered “an atypical intraoperative complication,” the court found “no evidence it followed a ‘relatively severe course.’ ” Id. The postoperative report confirmed the lack of complications. The court concluded:
Section 2519(B) does not end with the phrase “atypical in nature.” In interpreting the rule as if it did, the OWC and the workers’ compensation hearing officer used an incorrect test. St. Charles had the burden or [sic] proving not just that the surgery was atypical, but that it was atypical in nature due to case acuity. It failed to carry this burden, and thus it is not entitled to special reimbursement consideration. Because it failed to show case acuity, we need not address St. Charles’s additional failure to provide a comparison to its usual case mix.

Id.

Similarly, in Winn-Dixie, the employee who suffered a work-related injury ultimately underwent a cervical discectomy and fusion. The employer initially | mpaid the amount it believed was owed under the reimbursement schedule and, after a request by the hospital, paid 85% of the hospital’s bill. An audit was conducted, after which the employer sought reimbursement of amounts it believed it overpaid. The hospital refused to reimburse certain amounts (85% of the hospital charges incurred in connection with the surgery) and the employer filed suit.
The court considered the testimony of the chief financial officer for the hospital’s administrator, who indicated that resource consumption and risk are taken into ac-. count in measuring “intensity” for purposes of case acuity and case mix. Id., 10-2205, p. 6, 68 So.3d at 1190. He then testified that, for all inpatient hospital procedures in the year the employee’s surgery, the hospital’s case mix was 1.31, while the employee’s was 2.3351 (“almost double that of the general population, meaning that [the employee’s] case was much more intense requiring the consumption of more resources.”). Id., 10-2205, p. 6, 68 So.3d at 1191. He indicated that the employee’s “case was atypical in nature to all inpatient procedures conducted” at the hospital. Id., 10-2205, p. 7, 68 So.3d at 1191. In rejecting the suggestion that the case mix should be determined by utilizing “a broad population of procedures,” the court stated:
Such an approach, particularly in a case like this where a broad population of procedures was utilized to determine a hospital’s case mix, essentially permits the hospital to establish outlier status and entitlement to 85% of the billed charges simply by consuming resources in excess of the reimbursement rate established by OWCA. This is in derogation of the legislative directive that requires OWCA to establish a reimbursement schedule that includes charges “limited to the mean of the usual and customary charges for such *1260 care, services, treatment, drugs, and supplies,” with the obvious purpose of | ncapping the amount providers can charge employees for work-related expenses. See La. R.S. 23:1034.2(0(1).
Id. Agreeing with the Gray court that “ ‘due to case acuity1 ... mean[s] ‘acuteness,’ i.e. having a short and relatively severe course,” Id., the First Circuit concluded that the hospital failed to meet its burden of proving that the employee’s case was atypical due to case acuity. The record reflected that the surgery was routine with no complications, there was no acute or intensive care for which additional costs for the hospital stay were incurred and all of the operative reports indicated that the surgery was uneventful.
These cases can be distinguished from Johnson Bros. Corp. v. Thibodaux Reg’l Med. Ctr., 00-1673 (La.App. 1 Cir. 9/28/01), 809 So.2d 430 and City of Shreveport v. Lifecare Hospitals, Inc., 39,785 (La.App. 2 Cir. 6/29/05), 907 So.2d 837, the two cases on which Crescent City relies. In Johnson Bros., an employee was involved in an accident and sustained severe injuries to both of his legs, requiring a seven hour “complicated emergency surgery, which was followed by a four-day hospital stay.” Id., 00-1673, p. 2, 809 So.2d at 432.[6] After it was paid for the four day hospitalization on a per diem basis, the hospital requested further payment at the outlier rate. The administrator paid that amount without the employer’s knowledge, which then brought suit to recover the additional payment made by the administrator.
The OWC judge found that the hospital had proven outlier status. In affirming that judgment, the First Circuit interpreted LAC 40:1:2519 as follows:
| ^Special reimbursement consideration will be given to cases that are atypical (unusual) in nature when compared to the provider’s usual case mix or classification or types of patients treated by the provider. The atypical nature must be due to case acuity (acuteness) causing high charges.
Id., 00-1673, p. 8, 809 So.2d at 436.
Clearly, in Johnson Bros., there was no doubt that the surgery and hospitalization met the “case acuity” (acuteness) test, given the emergency nature of the surgery and the severity of the injuries. Likewise, the employee suffered “an acute post-surgical hemorrhage requiring blood transfusions.” Id. With respect to the hospital’s case mix, the nurse auditor explained that the hospital maintained a current case mix index of the hospital’s admissions for the prior year (excluding childbirth and rehabilitation patients). The nurse auditor testified that the employee’s case weight exceeded the hospital’s usual case mix and noted that, for surgeries involving repairs of the femur, the employee’s charges exceeded all others. The First Circuit found no manifest error in the factual findings that the case “was atypical in nature due to case acuity when compared to the provider’s usual case mix.” Id., 00-1673, p. 10, 809 So.2d at 438.
Outlier status was also affirmed in City of Shreveport, which involved the medical treatment of a city employee who was critically injured during the course and scope of his employment when he was shot in the head. The city’s third-party administrator paid the initial month of treatment on an outlier basis but, for the remaining months, paid on a per diem basis. Finding the entirety of the employee’s medical *1261 treatment to qualify for special reimbursement consideration, the Second Circuit held:
LAC 40:I:2519(B) applies by its terms to those “cases” that are atypical due to case acuity causing unusually Ishigh charges. In light of the use of the term “cases,” we interpret the rule to mean that the entire cost of the treatment of the patient, with certain limitations, is the critical factor to determine if the patient’s case is an “outlier.” So long as the provision of health care for a covered injury or illness consists of a single continuous course of treatment, that course of treatment constitutes a single “case” within the meaning of the rule, and the total cost of that treatment is the appropriate element to include in the outlier analysis
Id., 39,785, p. 10, 907 So.2d at 843.
In light of this jurisprudential background, in the instant matter, we do not agree with Crescent City that Mr. Mitchell’s surgery and hospitalization were “atypical in nature due to acuity.” Crescent City contends that several factors weigh in favor of a finding that Mr. Mitchell’s surgery “was sufficiently severe to qualify as ‘atypical’ in nature due to acuity.’ ” Those include the length of the surgery (seven hours), the fact that numerous surgical implants were used, and that Mr. Mitchell’s “surgery was so intense,” he “required a ‘four-day’ hospital stay to recover.” [7] Under Crescent City’s argument, every three-level lumbar fusion would automatically qualify as atypical in nature due to case acuity. This reasoning would have the effect of eliminating the phrase “atypical in nature due to case acuity” from LAC 40:1:2519 B altogether. As the Gray court recognized, the first showing that must be made to establish outlier status is that “the surgery was atypical.” Gray, 96-1637, 696 So.2d at 580. Next, it must be shown that it was “atypical in nature due to case acuity” (or acuteness). Id. To hold otherwise, any hospital may “establish outlier status and entitlement to 85% of the billed charges simply by consuming resources in excess of the reimbursement rate established by OWCA.” Winn-Dixie, 10-2205, p. 7, 68 So.3d at 1191.
luIn the instant matter, the record clearly establishes that, while a three-level fusion is a serious and complicated surgery, there was nothing about Mr. Mitchell’s surgery that was either “atypical” or “atypical because of case acuity.” Dr. Voorhies clearly testified that the surgery was not an emergency (or acute) surgery, there were no complications and the surgery went “as expected.” He likewise indicated that there was “nothing particular about Mr. Mitchell’s three level fusion that distinguished it from other three level fusions.” As to the length of Mr. Mitchell’s hospitalization, Dr. Voorhies testified that a “three day stay is about average,” even considering that he had some hip joint inflammation. Dr. Voorhies likewise confirmed that his operative report made no notation of any complications from the surgery.
Accordingly, we find that Crescent City did not sustain its initial burden of proof that Mr. Mitchell’s surgery and hospitalization were atypical in nature due to case acuity within the meaning of LAC 40:1:2519 B. Because of this finding, we need not address whether the “case acuity caus[ed] unusually high charges when compared to the provider’s usual case mix.” We note, however, that Crescent City’s chief financial officer, Jeff Morris, testified that the length of time that Mr. Mitchell was in the operating room exceeded the average time of Crescent City’s surgeries, the length of his hospital stay was 78 hours whereas the average stay of other patients *1262 was 24 hours, and the costs incurred for Mr. Mitchell’s case was higher than the average of other cases involving implants. Importantly, however, Mr. Morris admitted that he did not have any data regarding other three-level fusions as those are infrequently performed at Crescent City.
The OWC judge considered Mr. Morris’ testimony and found as follows:
11¡;Admittedly, Crescent City did not handle very many surgeries like the one Mr. Mitchell underwent. The analysis of resources Mr. Mitchell’s case took as compared to the other cases at the surgical facility was not comparable because the other cases did not involve the same complicated surgical procedure that Mr. Mitchell’s did. Thus, it is not surprising in this apples and oranges comparison that Mr. Mitchell’s case took more resources than cases that typically are less invasive and require less complex treatment and care.
The OWC judge’s analysis is similar to that of the Lakeview Regional case, in which the First Circuit noted that not “every case which is above average is an outlier case,” commenting that, under the hospital’s argument, “every case which is above the average hospital stay is an outlier.” Lakeview Regional, 13-1924, p. 6, 152 So.3d at 961.
Here, while Mr. Morris testified that Mr. Mitchell’s surgery costs exceeded the average case conducted at Crescent City by. “several hundred percent,” the cost, alone, is not the sole defining factor by which cases are evaluated for outlier status under LAC 40:1:2519 B. It is the atypical nature and acuity (acuteness) of the case, at the outset, which determines whether a given case meets the outlier standard. In this case, we find no error in the OWC’s determination that Crescent City “failed to demonstrate that Mr. Mitchell’s essentially ordinary, non-emergency and successful surgery or care would entitle [it] to special- reimbursement consideration.”
CONCLUSION
For the reasons set forth herein, the judgment of the Office of Worker’s Compensation is affirmed.
AFFIRMED.
BELSOME, J., dissents with reasons.
JENKINS, J., dissents for the reasons assigned by BELSOME, J.

. The invoice from Crescent City reflects the total amount of $179,800.27. Of this amount, the charges for implants together total $102,291.03. In its appellate brief. Crescent City states that the total charges for the surgery and hospitalization were $118,425.65, of which $40,916.41 was attributable to the charges for the implants, plus the statutory twenty percent markup. Because of our finding that Crescent City did not meet its burden of proving that it was entitled to special reimbursement consideration, we need not address the discrepancy between the parties as to the actual amounts at issue.

. See, e.g., Freeman v. Poulan/Weed Eater, 630 So.2d 733, 737 (La.1994); Lakeview Reg’l Med. Ctr. v. Washington Parish Sch. Bd., 13-1934, pp. 4-5 (La.App. 1 Cir. 7/17/14), 152 So.3d 957, Hall v. MacPapers, Inc., 11-1548, p. 4 (La.App. 4 Cir. 5/30/12), 95 So.3d 1131, 1134; Johnson Bros. Corp. v. Thibodaux Reg’l Med. Ctr., 00-1673, p. 6 (La.App. 1 Cir. 9/28/01), 809 So.2d 430, 435.

. The limited conditions which are automatic outliers include "AIDS,” "[a]cute [m]yocardial [i]nfarction” and "[s]evere [b]ums.” LAC 40:1:2519 A.

. “If approved, the provider will be reimbursed at covered billed charges less a fifteen percent (15%) discount.” LAC 40:1:2519 B(5).

. Other cases include Winn-Dixie Louisiana v. HCA Mgmt. Servs., L.P., 10-2205 (La.App. 1 Cir. 6/10/11), 68 So.3d 1187 and Gray Ins. Co. v. St. Charles Gen. Hosp., 96-1637 (La.App. 1 Cir. 6/20/97), 696 So.2d 577.

. The treating physician described the nature of the employee’s surgery to include “debridement and open reduction as well as application of external fixator for the fracture of the right ankle and the left supracondylar fracture, was treated with open reduction internal fixation using supracondylar nail as well as interfragmentary fixation.” Id., 00-1673, p. 8, 809 So.2d at 436.

. We note that the record reflects a three day hospitalization.