J2SHORTESS, Judge.
In 1991 Howard A. Lacy, Jr., injured his back while in the course and scope of his employment. When conservative treatment failed to bring relief, he opted for an anterior lumbar fusion in 1994. The surgery was performed by Dr. Stephen J. Flood at St. Charles General Hospital (St.Charles) in New Orleans. St. Charles’s bill for Lacy’s hospital stay was $27,171.85. The Gray Insurance Company (Gray), workers’ compensation insurer for Lacy’s employer, was obligated to pay a portion of that bill. The amount of Gray’s obligation is disputed.
In 1987, the legislature ordered the establishment of a reimbursement schedule for medical, surgical, and hospital services due under our workers’ compensation laws.[1] Louisiana Revised Statute 23:1034.2(B) directs the director of the Office of Workers’ Compensation (OWC) to adopt rules and regulations necessary to establish and implement such a schedule. Fees in excess of this schedule are not recoverable against the employee, employer, or workers’ compensation insurer.[2]
The reimbursement schedule is set forth in Title 40 of the Louisiana Administrative Code. It provides a per diem rate that varies by locality.[3] It also provides for additional payments for medical cases that are “outliers,” i.e., statistical anomalies. Hospitalizations for acquired immune deficiency syndrome, acute myocardial infarction, and severe burns are considered “automatic outliers” and are reimbursed at 85%.[4] Other cases, after an appeal process, may be reimbursed as outliers at 85% if they are “atypical in nature due to case acuity causing unusually high charges when compared to the provider’s usual case mix.”[5] A ease originally paid at the per diem rate may be appealed if (1) the total inpatient hospital surgical charges are greater than or equal to $100,000.00, (2) the total inpatient hospital *579 medical charges are greater than or equal to $75,000.00, or (3) the average charge per day is equal to 1.75 times the applicable daily rate.[6]
13If a health-care provider believes a case fits the appealable criteria, it may submit a request for review to the insurer. If that request is denied, the provider may file a “special reimbursement consideration appeal” with the OWC.[7] An appeal of that decision may then be filed using the same procedures established for dispute resolution of claims for workers’ compensation benefits.[8]
In this case, Gray originally paid St. Charles $8,445.00 for Lacy’s five-day hospitalization, or $1,689.00 per day. It contended this rate was the per diem rate at the time, although the schedule introduced into evidence shows a rate of $1,789.00 per day. Gray later supplemented that payment. The parties stipulated at trial the outstanding balance was $14,763.79.
Gray rejected St. Charles’s request for 85% reimbursement. St. Charles filed a spe-eial-reimbursement-consideration appeal with the OWC, which was approved. Gray then filed a claim with the OWC disputing the approval of the claim. The workers’ compensation hearing officer found St. Charles’s bill fit the criteria for the outlier provision and ordered Gray to pay St. Charles at the 85% reimbursement rate. Gray now appeals to this court.
St. Charles’s $27,171.85 bill averaged $5,434.37 per day, clearly more than 1.75 times the applicable per diem rate. It was thus appealable. In order to qualify for 85% reimbursement, however, St. Charles had the burden of proving the case was “atypical in nature due to case acuity causing unusually high charges when compared to the provider’s usual case mix.”
The OWC found that Lacy’s surgical procedure was “atypical in nature when compared to similar procedures performed utilizing the posterior approach” and that the provision of an orthopedic brace “resulted in a high resource consumption not always typical to lumbar surgery cases.” The hospital records indicate Lacy was provided a chair-back brace. There is no evidence in the record, however, to indicate provision of a brace following lumbar surgery is atypical. “Case acuity” and “the provider’s usual case mix” were not mentioned in granting St. Charles’s special-reimbursement-consideration appeal.
|4On Gray’s appeal of that approval, the hearing officer noted the differences between the anterior and posterior procedures. He also stated an intraoperative complication resulted in “an extension of the already prolonged procedure time.” He concluded by noting the charges exceeded 1.75 times the applicable per diem. Again, case acuity and the provider’s usual case mix were not mentioned.
Neither the Administrative Code nor Louisiana jurisprudence assists us in interpreting the test for special reimbursement under Title 40, Section 2519, of the Administrative Code. We are certain, however, that the test encompasses more than whether a surgery is typical when compared to other surgeries involving the same area of the body.
Section 2519(B) states special reimbursement consideration will be given to cases “atypical in nature due to case acuity.” (Emphasis ours.) The rule does not define “acuity.” Acuity is generally defined as clarity or keenness of sense perception.[9] We believe the drafters meant “acuteness,” which, in a medical sense, means having a short and relatively severe course.[10]
According to the medical records and the testimony of Flood, the treating physician, there was nothing acute about Lacy’s *580 case. Lacy had suffered from low-back problems for over two and one-half years before the accident. Flood testified Lacy tolerated the surgical procedure “fairly typically,” and his inpatient care was “fairly routine.”
Lacy suffered an atypical intraoperative complication, but there is no evidence it followed a “relatively severe course.” Flood noted no complications in his postoperative report. Dr. Michael Adinolfi, the general surgeon who performed the initial portion of the surgery, noted bleeding during the surgery caused by a possible avulsion of one of the small branches of the aorta, which he repaired with two sutures. Flood noted this complication “sounds terrible,” but stated the avulsion was “fairly easily repaired.”
Section 2519(B) does not end with the phrase “atypical in nature.” In interpreting the rule as if it did, the OWC and the workers’ compensation hearing |5officer used an incorrect test. St. Charles had the burden or proving not just that the surgery was atypical, but that it was atypical in nature due to case acuity. It failed to carry this burden, and thus it is not entitled to special reimbursement consideration. Because it failed to show case acuity, we need not address St. Charles’s additional failure to provide a comparison to its usual case mix.
For these reasons, the judgment of the hearing officer declaring St. Charles is entitled to special reimbursement consideration and ordering Gray to pay St. Charles in accordance with the outlier provision is reversed, and judgment is rendered in favor of Gray. Costs of this appeal are taxed to St. Charles.
REVERSED AND RENDERED.

. Acts 1987, No. 633, § 1.

. La. R.S. 23:1034.2(D).

. L.A.C. 40:2505.

.L.A.C. 40:2519(A).

. L.A.C. 40:2519(B)(1).

. L.A.C. 40:2519(B)(2) and 2519(B)(3).

. La. R.S. 23:1034.2(F).

. See Webster’s Third New International Dictionary of the English Language, Unabridged 22 (1993); Dorland’s Illustrated Medical Dictionary 25 (27th ed.1985).

.Dorland's Illustrated Medical Dictionary 25 (27th ed.1985).