KUHN, J.
 

 [ gDefendants-appellants, Lakeview Regional Medical Center (Lakeview), and its administrator, HCA Management Services, L.P. (HCA), appeal the judgment of the Office of Workers’ Compensation Administration (OWCA), awarding plaintiff-appel-lee, Winn-Dixie Louisiana (Winn-Dixie), reimbursement for overpayment it made to Lakeview on behalf of its injured employee. We affirm.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 The parties do not dispute that Winn-Dixie employee, Nowert Hills, had a work-related accident in the course and scope of his employment for which he received treatment. Later, Hills complained of neck pain and treated with Dr. Jeffery Oppenheimer. Dr. Oppenheimer diagnosed Hills with spondylosis, a degenerative condition of the vertebra of his neck, and recommended that he undergo an interior cervical diskectomy and fusion. On January 7, 2005, Hills presented at Lake-
 
 *1189
 
 view for surgery, which was performed the same day. After a day of observation, Hills was discharged from the hospital on January 9, 2005.
 

 On February 3, 2005, Winn-Dixie, the undisputed party responsible for the costs of Hills’ surgery under the Louisiana Workers’ Compensation Act, received a bill for $81,044.33 from Lakeview. Winn-Dixie sent a check for $4,118.00 to Lake-view, which the employer determined was the amount due for the New Orleans-based surgery under the OWCA reimbursement schedule. On March 25, 2005, as Lake-view’s administrator, HCA sent a letter to Winn-Dixie which included a section that was boxed off from the remainder of the letter. According to the description set forth in the boxed section, under state law, Winn-Dixie owed 85% . of the billed charges. On April 25, 2005, a Winn-Dixie agent paid $64,770.11 to |..¡Lakeview for the charges incurred for Hills’ surgery. A subsequent audit by an agent for Winn-Dixie revealed that Lakeview had charged $39,049.00 for the implants that had been surgically placed into Hills. Winn-Dixie contacted HCA and Lakeview, advising that it did not believe the hospital was entitled to either 85% of the billed surgical charges or the amount billed for the implants.
 

 The parties ultimately agreed that Lake-view was not entitled to the billed amount of the implants, and Winn-Dixie was reimbursed $22,302.82 for the overcharge. But HCA and Lakeview refused to reimburse any other amount to Winn-Dixie. A Winn-Dixie agent submitted a special reimbursement consideration request with OWCA. On June 5, 2006, an assistant secretary with the Louisiana Department of Labor, OWCA (DOL/OWCA) issued a ruling concluding that, based on the documentation provided by Winn-Dixie, Lake-view was entitled to no additional payments in excess of the New Orleans per diem rate in conjunction with Hills’ surgery.
 
 [1]
 

 After HCA and Lakeview refused to reimburse the overpayment so as to conform to the DOL/OWCA ruling, Winn-Dixie, joined by its administrator Sedgwick Claims Management, filed this petition. After a trial on the merits, an OWCA judge determined that Lakeview had not met the criteria to charge 85% of the billed hospital charges for Hills’ surgery and, thus, Winn-Dixie was entitled to reimbursement in the amount of $31,578.29. This appeal by FICA and Lakeview followed in which, without challenging the quantum of the award, they assert that |4OWCA erred in its construction of terms of art used in the regulations that set forth the criteria for additional compensation.
 

 DISCUSSION
 

 As this court noted in
 
 Gray Ins. Co. v. St. Charles Gen. Hosp.,
 
 96-1637, pp. 2-3, 696 So.2d 577, 578 (La.App. 1st Cir.6/20/97), the Louisiana legislature has established a reimbursement schedule for medical, surgical, and hospital services due under our workers’ compensation laws. La. R.S. 23:1034.2(B) directs OWCA to adopt rules and regulations necessary to establish and implement such a schedule. Fees in excess of this schedule are not recoverable against the employee, employer, or workers’ compensation insurer. La. R.S. 23:1034.2(D).
 

 The reimbursement schedule is set forth in Title 40 of the Louisiana Administrative
 
 *1190
 
 Code. It provides a per diem rate that varies by locality. L.A.C. 40:2505. It also provides for additional payments for medical cases that are “outliers,” i.e., statistical anomalies. Hospitalizations for acquired immune deficiency syndrome, acute myocardial infarction, and severe burns are considered “automatic outliers” and are reimbursed at 85% of the billed hospital charges. L.A.C. 40:2519(A). Other cases, after an appeal process, may be reimbursed as outliers at 85% if they are “atypical in nature due to case acuity causing unusually high charges when compared to the provider’s usual case mix.” L.A.C. 40:2519(B). A case originally paid at the per diem rate may be appealed if (1) the total inpatient hospital surgical charges are greater than or equal to $100,000.00, (2) the total inpatient hospital medical charges are greater than or equal to $75,000.00, or (3) the average charge per day is equal to 1.75 times the applicable daily rate. L.A.C. 40:2519(B)(1).
 

 Uf a health-care provider believes a case fits the appealable criteria, it may submit a request for review to the insurer. If that request is denied, the provider may file a “special reimbursement consideration appeal” with the OWCA. L.A.C. 40:2519(B)(2) and (3). An appeal of that decision may then be filed using the same procedures established for dispute resolution of claims for workers’ compensation benefits. La. R.S. 23:1034.2(F).
 

 As noted above, in this case, it was Winn-Dixie, as payor, rather than Lake-view (and/or HCA), the provider in this case, that requested the review under L.A.C. 40:2519 B. And when HCA and Lakeview chose not to conform to the ruling of DOL/OWCA, it was employer Winn-Dixie that filed a petition using the same procedures established for dispute resolution of claims for workers’ compensation benefits. We find no error in this approach.
 

 At the trial before the OWCA, the burden of proving outlier status so as to qualify for payments in addition to the surgical per diem — i.e., reimbursement at the rate of 85% of the billed charges — was with Lakeview (and HCA) as the party claiming entitlement to it.
 
 See Gray Ins. Co.,
 
 96-1637 at p. 3, 696 So.2d at 579. Thus, HCA and Lakeview had to show that Hills’ case was “atypical in nature due to case acuity causing unusually high charges when compared to the provider’s usual case mix.”
 
 Gray Ins. Co.,
 
 96-1637 at p. 3, 696 So.2d at 579.
 

 But L.A.C. 40:2519(B) does not define “acuity.” As noted by the
 
 Gray
 
 court, “acuity” is generally defined as clarity or keenness of sense perception.96-1637 at p. 4 & n. 9, 696 So.2d at 579 & n. 9. Recognizing the inappropriateness of that definition in the interpretation of the plain language of the regulation, the
 
 Gray
 
 court concluded the drafters meant “acuteness,” which, lñthe court noted, in a medical sense means having a short and relatively severe course. 96-1637 at p. 4 & n. 10, 696 So.2d at 579 & n. 10.
 

 HCA and Lakeview suggest that the
 
 Gray
 
 court’s interpretation of “case acuity” does not comport with the meaning of the term as used in the health care industry when dealing with billing issues. In support of this assertion, they offered testimony from Patrick Clune, the chief financial officer for HCA Houston Shared Services, admitted as an expert in hospital financing, billing, and collections.
 

 In determining case acuity and case mix, Clune explained that hospitals measure “intensity” in terms of resource consumption as well as risk. He testified that in determining the case acuity for Hills’ surgery, he examined the case mix for Lake-view in 2005 when the surgery was under
 
 *1191
 
 taken. Based on the aggregation of all patients within the hospital setting, accounting for all inpatient hospital procedures, Clune determined that Lakeview’s case mix in 2005 was 1.31. And he calculated Hills’ case acuity at 2.3351. Clune stated that the difference between Hills’ case acuity and Lakeview’s case mix was almost double that of the general population, meaning that Hills’ case was much more intense requiring the consumption of more resources. Thus, HCA and Lake-view maintain that because the average per day charge for Hills’ case equates to in excess of 1.75 times the applicable per diem rate under L.A.C. 40:2519(B)(l)(c), Lakeview is entitled to outlier status.
 

 Clune admitted in calculating case mix vis-á-vis case acuity, all inpatient procedures performed at the hospital were an element of the determination. Therefore, unlike the case in
 
 Gray
 
 where this court reversed the OWCA |7conclusion that St. Charles General Hospital was entitled to outlier status because it had proven that the surgical procedure undertaken was atypical in nature to similar lumbar surgery cases performed at that-hospital,
 
 see
 
 96-1637 at p. 3, 696 So.2d at 579, Clune’s testimony supports a finding that Hills’ case was atypical in nature to all inpatient procedures conducted at Lakeview in 2005, which is a broader case mix population than that utilized in
 
 Gray.
 
 Clune admitted that in using the population of all inpatient procedures in the case mix assessment, everything from deliveries of babies to wart removals was included. Such an approach, particularly in a case like this where a broad population of procedures was utilized to determine a hospital’s case mix, essentially permits the hospital to establish outlier status and entitlement to 85% of the billed charges simply by consuming resources in excess of the reimbursement rate established by OWCA. This is in derogation of the legislative directive that requires OWCA to establish a reimbursement schedule that includes charges “limited to the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies,” with the obvious purpose of capping the amount providers can charge employees for work-related expenses.
 
 See
 
 La. R.S. 23:1034.2(0(1). Thus, like the
 
 Gray
 
 court, we believe the test for outlier status encompasses more than whether a surgery is typical when compared, not only to other surgeries involving the same area of the body but also, to all other inpatient procedures performed at a hospital.
 
 See
 
 96-1637 at p. 4, 696 So.2d at 579. Accordingly, we interpret “due to case acuity” in L.A.C. 40:2519(B) to mean “acuteness,” i.e., having a short and relatively severe course.
 

 1 ¡According to the medical records and testimony of Winn-Dixie agent, registered nurse Bonita Saucier, Hills had spondylosis, a degenerative condition that had deteriorated to where he was having radicular symptoms in his arms. As a degenerative condition, she distinguished spondylosis from one that was acute and an emergency situation. Hills’ operative report stated the surgery was a routine cervical procedure with no indications of any complications. Nothing in the operative report suggested that Hills required acute or intensive care, which resulted in additional costs for the hospital stay. The hospital summary noted a routine hospital course with a discharge the second postoperative day. Hills was in the surgical suite approximately three hours and twenty-two minutes for a procedure that was concluded in less than two hours. The anesthesia report indicated that there had been no complications and that, from the anesthesia aspect, the surgery had been uneventful. And the hospital progress notes stated that after surgery, Hills’ radi-
 
 *1192
 
 cular pain had been eliminated and there were no indications of any problems. HCA and Lakeview offered no evidence in contradiction to that established by Saucier.
 

 Based on the evidence presented to OWCA, we find no error in its conclusion that HCA and Lakeview are not entitled to special reimbursement consideration under L.A.C. 40:2519(B) having failed to establish that Hills’ case was atypical due to case acuity since nothing supports a finding that his case was a short and relatively severe course of medical treatment.
 
 [2]
 
 Accordingly, OWCA | acorrectly ordered HCA and Lakeview to reimburse Winn-Dixie the amount in excess of the New Orleans surgical per diem for two days.
 

 DECREE
 

 For these reasons, the OWCA judgment is affirmed. Appeal costs are assessed against defendants-appellants, HCA Management Services, L.P. and Lakeview Regional Medical Center.
 

 AFFIRMED.
 

 [1]
 

 . The DOL/OWCA ruling also confirmed that under Louisiana’s workers’ compensation reimbursement schedule, HCA and Lakeview were entitled to charge no more than the invoiced cost of the implants plus 20% as profit. Thus, reimbursement to Winn-Dixie for the approximately 400% markup on the implants
 

 [2]
 

 . We find no merit in HCA and Lakeview’s contention that the trial court erred in relying on the letter issued by DOL/OWCA concluding that the provider was entitled to no more than the New Orleans surgical per diem for two days.
 
 See
 
 La. R.S. 23:1317 A. More importantly, OWCA's conclusion that FICA and Lakeview failed their burden of proof is supported by the evidence even without consideration of the letter containing the ruling of DOL/OWCA. Thus, there was no error, was proper.