DRAKE, J.
| ¡.Plaintiff-appellant, Lakeview Regional Medical Center (Lakeview), appeals the judgment of the Office of Workers’ Compensation Administration (OWCA), denying Lakeview’s claims for reimbursement against defendant-appellee, Washington Parish School Board (School Board) for the medical expenses related to an injured employee of the School Board. We affirm.

FACTUAL AND PROCEDURAL HISTORY

It is undisputed that School Board employee, Leisa Rawls, sustained a work-related injury on January 3, 2000, while in *959 the course and scope of her employment. On August 14, 2008, while undergoing an epidural steroid injection in connection with her work-related injury, she began to experience chest tightness and shortness of breath. Rawls was then taken to Lake-view where she was stabilized as a heart patient. The treating physician, Dr. Smita Patel, evaluated Rawls for both a pulmonary embolism and heart issues. Rawls had mild pain but otherwise her exam was normal. A CT scan of the heart vessels was ordered, as well as a CT scan and angiogram of the pulmonary vessels.
Dr. Barry Kusnick, a cardiologist, treated Rawls while she was at Lakeview. The CT scan of the heart showed some blockages. The first CT scan of the pulmonary vessels was unclear, so Rawls underwent a second test that showed a small pulmonary embolus. On August 18, 2008, Dr. Kus-nick performed a cardiac catheterization, but found the blockage insufficient to require a stent to be placed in the heart. Dr. Kusnick concluded that Rawls had “normal left ventricular size and function,” “minimal, if any, nonobstructive coronary artery disease,” a “false positive coronary CT angiography,” and “noncardiac chest pain.” No intervention was taken by the cardiologist. As a result, Dr. Patel determined that Rawls had a pulmonary embolism. Rawls was hospitalized from August 14, 2008, to August 20, 2008. The total charge for the hospital stay at Lakeview was $54,588.34. On ^September 29, 2008, the School Board, the party responsible for the costs of Rawls’s procedure under the Louisiana Workers’ Compensation Act, paid only $12,354 to Lakeview, which represented six days of surgical per diem for the New Orleans area at the rate of $2059 per day.
Lakeview filed suit with the OWCA, claiming that it was entitled to the remainder of the amount charged for Rawls’s hospital stay, pursuant to the inpatient outlier reimbursement provision, as set forth in the Louisiana Administrative Code, Title 40, Part I, § 2519(B)(1)(c). Lakeview asserts that it is entitled to special reimbursement consideration and that the payment of medical expenses is not limited to the per diem rate if the average per day charge for any case equates to 1.75 times the applicable per diem rate and meets certain outlier criteria. In such a case, Lakeview claims that it is to be reimbursed at covered billed charges less a fifteen (15) percent discount.
A trial was held before the OWCA on May 24, 2013. On June 19, 2013, the OWCA issued its judgment, denying Lake-view’s claim for outlier status and dismissing the case with prejudice. On the same day, the OWCA issued written reasons for judgment, stating that Lakeview had not carried its burden of proof that it was entitled to outlier status. Lakeview appealed this judgment.

STANDARD OF REVIEW

A court of appeal may not overturn a judgment of a trial court unless there is an error of law or a factual finding that is manifestly erroneous or clearly wrong. Morris v. Safeway Ins. Co. of Louisiana, 03-1361 (La.App. 1 Cir. 9/17/04), 897 So.2d 616, 617, writ denied, 04-2572 (La.12/17/04), 888 So.2d 872. The Louisiana Supreme Court has posited a two-part test for the appellate review of facts in order to affirm the factual findings of the trier of fact: (1) the appellate court must find from the record that there is a reasonable factual basis for the finding of the trier of fact; and (2) the appellate court must further determine that |4the record establishes that the finding is not clearly wrong (manifestly erroneous). See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable *960 factual basis in the record for the trier of fact’s finding, no additional inquiry is necessary to conclude there was manifest error. ‘However, if a reasonable factual basis exists, an appellate court may set aside a factual finding only if, after reviewing the record in its entirety, it determines the factual finding was clearly wrong. See Stobart v. State, through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993); Moss v. State, 07-1686 (La.App. 1 Cir. 8/8/08), 993 So.2d 687, 693, writ denied, 08-2166 (La.11/14/08), 996 So.2d 1092. If the trial court’s factual findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse those findings, even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Smegal v. Gettys, 10-0648 (La.App. 1 Cir. 10/29/10), 48 So.3d 431, 435.

DISCUSSION

The Louisiana legislature has established a reimbursement schedule for medical, surgical, and hospital services due under our workers’ compensation' laws. Louisiana Revised Statute 23:1034.2(B) directs the OWCA to adopt rules and regulations necessary to establish and implement such a schedule. Fees in excess of this schedule are not recoverable against the employee, employer, or workers’ compensation insurer. La. R.S. 23:1034.2(D). Winn-Dixie Louisiana v. HCA Mgmt. Servs., L.P., 10-2205 (La.App. 1 Cir. 6/10/11), 68 So.3d 1187, 1189; Gray Ins. Co. v. St. Charles Gen. Hosp., 96-1637 (La.App. 1 Cir. 6/20/97), 696 So.2d 577, 578.
The reimbursement schedule is set forth in Louisiana Administrative Code, Title 40, Part I, § 2505 and provides a per diem rate that varies by locality. It also provides for additional payments for medical cases that are “outliers,” i.e., statistical anomalies. Hospitalizations for acquired immune deficiency syndrome, | .¡acute myocardial infarction, and severe bums are considered “automatic outliers” and are reimbursed at 85% of the billed hospital charges. La. Admin. -Code 40:2519(A). Other cases, after an appeal process, may be reimbursed as outliers at 85% if they are “atypical in nature due to case acuity causing unusually high charges when compared to the provider’s usual case mix.” La. Admin. Code 40:2519(B). A case originally paid at the per diem rate may be appealed if (1) the total inpatient hospital surgical charges are greater than or equal to $100,000, (2) the total inpatient hospital medical charges are greater than or equal to $75,000, or (3) the average charge per day for any case is equal to 1.75 times the applicable daily rate. La. Admin. Code 40:2519(B)(1).
If a health-care provider believes a case fits the appealable criteria, it may submit a request for review to the insurer. If that request is denied, the provider may file a “special reimbursement consideration appeal” with the OWCA, La. Admin. Code 40:2519(B)(2) and (3). An appeal of that decision may then be filed using the same procedures established for dispute resolution of claims for workers’ compensation benefits. La. R.S. 23:1034.2(F).
Lakeview had the burden at the trial before the OWCA to prove outlier status, so as to qualify for payments in excess of the surgical per diem. See Winn-Dixie v. HCA, 68 So.3d at 1190. An outlier is a statistical anomaly and permits special reimbursement consideration in cases that are atypical. Winn-Dixie Louisiana v. Physicians Surgical Specialty Hospital, 13-0075 n. 2 (La.App. 1 Cir. 10/18/13), 136 So.3d 801. In order to prove outlier status, Lakeview had to show that Rawls’s case was “atypical in nature *961 due to case acuity causing unusually high charges when compared to the provider’s usual case mix.” La. Admin.Code 40:2519(B); Winn-Dixie v. HCA, 68 So.3d at 1190.
This court has previously recognized that La. Admin. Code 40:2519(B) does not define “acuity.” Winn-Dixie v. HCA, 68 So.3d at 1190; Gray, 696 So.2d at 579. Therefore, this court determined in Gray that the drafters meant “acuteness,” which in a medical sense, means having a short and relatively severe course. Gray, 696 So.2d at 579. Winn-Dixie agreed with Gray and determined that the test for outlier status encompasses more than whether a surgery is typical when coin-pared, not only to other surgeries involving the same area of the body, but also, to all other inpatient procedures performed at a hospital. Winn-Dixie v. HCA, 68 So.3d at 1190-91.
Jarrett James Taylor, a financial analyst manager for Hospital Corporation of America, which owns Lakeview, testified on behalf of Lakeview. Taylor explained that each patient is assigned a Diagnoses Related Group (DRG) to provide Medicare with a basis for payment. He testified that Rawls was at Lakeview for six days, but that the average length of stay for all inpatients for a year ending August 31, 2008, was 4.82 days. Lakeview argues that because Rawls stayed 1.2 days above the average, her case falls into the outlier category. We do not agree that every case which is above average is an outlier case. A little over one day above the average does not make Rawls’s case atypical. Lake-view’s argument would mean that every case which is above the average hospital stay is an outlier. This ignores the wording of La. Admin. Code 40:2519(B), which allows special reimbursement consideration for cases “atypical in nature due to case acuity.”
Lance Loria, a management consultant and certified public accountant, testified on behalf of Lakeview. He testified that Rawls was assigned a DRG of 286, which is for disorders of circulatory systems with major complications and comorbidities. He created an exhibit that listed all of the DRG 286 cases at Lakeview for the calendar year of 2008. Lakeview prepared an analysis based on Rawls’s length of stay to come up with a case mix index. Lakeview argues that-the testimony and exhibits show that the average case mix index for the hospital |7was 1.29 and for Rawls, a DRG 286, was 1.677. Therefore, Lakeview asserts that Rawls’s particular DRG case mix is 30% greater than the average of all cases that Lakeview saw that year. Loria also testified that of all the DRG 286 cases at Lakeview for the calendar year 2008, Rawls was in the top quarter percentile. Ten cases cost less than the cost of her stay and four cases cost more than the cost of her stay.
John Kocke, an expert in medical bill review, testified for the School Board. He testified that if an average of all the DRG 286’s at Lakeview for the calendar year 2008 was taken, Rawls’s charges were approximately $2000 above the average cost for those cases. Kocke explained that a DRG 286 is for a person who has circulatory problems. In this case, the patient underwent a cardiac catheterization as part of the treatment for the pulmonary embolism. He testified that DRG 286 is for “circulatory disorders without acute myocardial infarction meaning they did not have a heart attack but with a cardiac catheterization.” Kocke also testified that Rawls’s case was not a case that was atypical in nature due to case acuity causing unusually higher charges when compared to the provider’s usual case mix.
In the instant case, the OWCA heard the testimony of all the witnesses as *962 to the case mix index of the hospital and reviewed the evidence submitted by the parties. Based on the evidence adduced at trial and the credibility determinations made by the OWCA, the OWCA concluded that Lakeview did not carry its burden of proof that the hospitalization of Rawls was an outlier requiring special reimbursement. Under the manifest error rule, the reviewing court does not decide whether the factual findings are right or wrong, but whether they are reasonable in light of the record. Butler v. L & N Food Stores, 11-0577 (La.App. 1 Cir. 2/10/12), 91 So.3d 342, 344. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact may not be disturbed | supon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Credibility determinations are for the trier of fact, even as to the evaluation of expert witness testimony. Sportsman Store of Lake Charles, Inc. v. Sonitrol Security Systems of Calcasieu, Inc., 99-0201 (La.10/19/99), 748 So.2d 417, 421; Lirette v. State Farm Ins. Co., 563 So.2d 850, 853 (La.1990). A fact-finder may accept or reject the opinion expressed by an expert, in whole or in part. Lirette, 563 So.2d at 855. The OWCA was entitled to accept or reject any of the opinions offered by the experts for either party at trial. The OWCA, after hearing all of the testimony, found that Lakeview did not meet its burden of proof as to outlier status. The OWCA noted in its written reasons that it believed both the outpatient data and inpatient data should have been included in the case mix of Lakeview. In reviewing the correctness of the trial court’s judgment against the hospital, we are not limited to the written reasons for judgment. It is well settled that appeals are taken from judgments, not written reasons, and if the trial court reached the proper result, the judgment should be affirmed. Elliott v. Elliott, 10-0755 (La.App. 1 Cir. 9/10/10), 49 So.3d 407, 416 n. 3, unit denied, 10-2260 (La.10/27/10), 48 So.3d 1088. We find that the record is sufficient to support OWCA’s finding that Lakeview did not carry its burden of proof.
We also note that the case relied upon by Lakeview, Johnson Bros. Corp. v. Thibodaux Regional Medical Center, 00-1673 (La.App. 1 Cir.9/28/01), 809 So.2d 430, is distinguishable from the present case. In Johnson, the evidence showed that when comparing the costs for all the cases having the same code as the patient for a two-year period, the charges at issue exceeded all the others. Johnson, 809 So.2d at 437-38. In the present case, comparing the costs for all the cases having DRG 286 for one year, Rawls’s charges of $54,583 are the fifth highest out of 15 cases. One was $110,972, which is more than double Rawls’s charges. The other | ¡¡three above Rawls were $66,586, $81,970, and $100,036. Therefore, reliance on the Johnson case is misplaced, and we agree that Lakeview did not carry its burden of showing Rawls’s case was an anomaly or atypical.
According to the medical records and testimony of Dr. Patel, Rawls had a previous back injury for which she had sought a lumbar epidural injection. During that injection, Rawls began suffering chest pain. She was brought to Lakeview, where Dr. Patel attempted to determine if Rawls had a coronary issue or a pulmonary embolism. After undergoing.many tests and a heart catheterization procedure, it was determined that Rawls had a pulmonary embolism. In this case, the CT scan of the lungs had to be repeated, the left heart catheterization had to be completed, and the patient was placed on Lovenox. Dr. Patel had treated other pulmonary embolism patients prior to treating Rawls, and pulmonary embolisms were a regular part *963 of Lakeview’s cases. Dr. Patel testified that the treatment for Rawls was standard, but that her case was atypical since such a young woman (47 years old) was presenting chest pain and the CT scan showed some blockages. Therefore, Dr. Patel had to rule out heart issues also. However, Dr. Patel agreed that she had seen this situation before where heart issues had to be addressed with pulmonary embolisms. Dr. Patel also agreed on cross examination that the standard of care for Rawls was typical. Dr. Patel also agreed that working up a patient for both cardiac and pulmonary issues is more than average, but not something outside Lakeview’s normal case base.
While at Lakeview Rawls, underwent several CT scans. One CT scan indicated a pulmonary embolism. One CT scan of her heart indicated possible blockages. Therefore, a cardiac catheterization was performed on the left side of the heart, which was ultimately found to be normal. The cardiac catheterization also determined that the chest pain was noncardiac, thereby confirming the diagnosis of pulmonary embolism. There were no complications during the |10cardiac catheterization. There is no evidence to indicate that the treatment of Rawls was atypical given the medical records and testimony of Dr. Patel. Although Lakeview had to rule out cardiac issues to diagnose Rawls, there is no evidence that this is atypical in treating pulmonary embolisms. Furthermore, the statistics used by Lakeview indicate that within a year, Lakeview treated much worse cases with a DRG 286 than Rawls.
Based on the evidence presented to OWCA, we find no error in its conclusion that Lakeview is not entitled to special reimbursement consideration under La. Admin. Code 40:2519(B), having failed to establish that Rawls’s case was atypical due to case acuity, since nothing supports a finding that her case was a short and relatively severe course of medical treatment.

CONCLUSION

For the reasons set forth above, the OWCA judgment is affirmed. Costs of the appeal are assessed against Lakeview Regional Medical Center.
AFFIRMED.