STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 1569

REBECCA ANN DONALDSON

VERSUS

MICHELE GUIDRY

Judgment Rendered: JUL 0 8 2022

* * * * * * *

On Appeal from the 19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court Docket Number C701499, Sec. "22"

The Honorable Timothy Kelley, Judge Presiding

* * * * * * *

Shannon M. Fay
Baton Rouge, Louisiana

Counsel for Plaintiff/Appellee,
Rebecca Ann Donaldson


Mary E. Roper
Randy B. Ligh
Baton Rouge, Louisiana

Counsel for Defendant/Appellant,
Michele Guidry


BEFORE: WHIPPLE, C.J., PENZATO, AND HESTER, JJ.

**PENZATO, J.**

Appellant, Michele Guidry, appeals the portion of a judgment finding her in contempt of court for violating a January 2021 mutual stay away order and ordering her to pay a stipulated penalty in the amount of $2,500.00 plus costs and attorney fees in the amount of $3,750.00 incurred by appellee, Rebecca Ann Donaldson. For the reasons that follow, we affirm. We deny Donaldson's request for attorney fees pursuant to La. C.C.P. art. 2164.

## FACTS AND PROCEDURAL HISTORY

Donaldson and Guidry each filed a petition for protection from stalking against the other in November 2020. Shortly thereafter, the parties agreed to an eighteen-month mutual stay away order. The agreement, which became an order of the court on January 19, 2021, provides that each party shall not (1) contact the other personally or through a third party by any means, including but not limited to telephone, text, email, or social media; (2) reference the other party by name on any social media platform or any other public forum; (3) be physically within one hundred yards of the other party, her residence, or her place of employment; (4) contact by any means the other party's employer or any affiliate, agent, or association related to the other party's occupation or employment; or (5) bring another claim for a restraining order and/or injunctive relief against the other party unless the party against whom the claim is brought violates the terms and conditions of the agreement. The stay away order further provides that, should either party violate its terms and conditions, the violating party shall be liable to the other for payment of a penalty of $2,500.00, together with reasonable attorney fees.

Donaldson filed a rule for contempt on March 8, 2021, alleging that Guidry violated the January 2021 stay away order in multiple ways, including by repeatedly texting Donaldson and calling her place of employment from blocked, unavailable, or "spoofed" numbers and by requesting to follow Donaldson on social media.

Donaldson also maintained that Guidry sent text messages about Donaldson to Donaldson's ex-husband via blocked or unknown numbers. A month later, on April 22, 2021, Guidry filed a rule for contempt, alleging that Donaldson violated the stay away order by, among other things, sharing specific information about Guidry with Guidry's employer and/or patients and joining the gym where Guidry was a member. Each party also filed a petition for protection from stalking against the other.

A hearing on both rules for contempt and petitions for protection was held on June 16, 2021. After hearing testimony and receiving evidence on all issues, the trial court concluded that Donaldson and her witness (Donaldson's ex-husband, Jamie McKinney) were more credible than Guidry, whose testimony the court found "difficult to believe." The trial court granted Donaldson's petition for protection and denied Guidry's petition for protection. The trial court also granted Donaldson's rule for contempt, finding that Guidry violated the mutual stay away order "multiple times in multiple fashions," specifically, provisions (1), (2), and (4). Pursuant to the penalty provision of the stay away order, the court ordered Guidry to pay $2,500.00 to Donaldson, along with $3,750.00 in attorney fees and costs.

The original judgment, signed on July 1, 2021, failed to include appropriate decretal language. After Guidry's appeal was lodged, this court remanded the matter to the trial court with instructions to supplement the record with an amended judgment correcting the deficiencies in the decretal language. The record was supplemented with an amended judgment signed on May 17, 2022, which contains proper decretal language.

## DISCUSSION

Guidry appeals the portion of the judgment finding her in contempt of court. The portions of the judgment granting Donaldson's petition for protection and denying Guidry's petition for protection and rule for contempt are not at issue in this appeal.[1]

In her sole assignment of error, Guidry asserts that the trial court's factual finding that she violated the mutual stay away order was manifestly erroneous such that the court abused its discretion by holding her in contempt. As noted, the trial court concluded that Guidry violated three provisions of the mutual stay away order – (1) the prohibition against contacting the other party directly or through a third party, (2) the prohibition against referencing the other party on social media, and (4) the prohibition against contacting the other party's employer. After reviewing the testimony and evidence presented during the June 16th hearing, we find no manifest error in the trial court's factual determinations and, thus, find the trial court did not abuse its discretion by finding Guidry in contempt.

**Standard of Review**

The mutual stay away agreement was a valid compromise of the parties' dispute arising out of the November 2020 petitions for protection. *See* La. C.C. art. 3071. Once the stipulated order was signed by the court, it became a valid, legal judgment punishable by contempt. *See Parish of Jefferson v. Lafreniere Park Foundation*, 98-345 (La. App. 5th Cir. 9/15/98), 720 So.2d 359, 363, *writ denied*, 98-2598 (La. 10/28/98), 723 So.2d 965. A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. La. C.C.P. art. 221. Willful disobedience of any lawful judgment or order of the court is constructive contempt

---

[1] Guidry likewise does not challenge the amount of the stipulated fine or attorney fees awarded to Donaldson. Thus, we make no finding concerning the appropriateness of these awards.

of court. La. C.C.P. art. 224(2). Proceedings for contempt must be strictly construed, and the policy of our law does not favor extending their scope. A finding that a person willfully disobeyed a court order in violation of Article 224(2) must be based on a finding that the accused violated an order of the court intentionally, knowingly, and purposefully, without justifiable excuse. *Capital City Press, L.L.C. v. Louisiana State University System Board of Supervisors*, 2013-1803, 2013-1804 (La. App. 1st Cir. 12/30/14), 168 So.3d 669, 674.

The decision to hold a party in contempt of court for disobeying the court's orders is within the trial court's great discretion. Only if the appellate court finds an abuse of that discretion will a trial court's contempt ruling be reversed. However, the predicate factual determinations underlying the finding of civil contempt of court are reviewed under the manifest error standard of review. *Schmidt v. Schmidt*, 2018-0202 (La. App. 1st Cir. 1/3/19), 270 So.3d 804, 809. If the trial court's factual findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse those findings. *Lakeview Regional Medical Center v. Washington Parish School Board*, 2013-1934 (La. App. 1st Cir. 7/17/14), 152 So.3d 957, 960. The issue to be resolved by a reviewing court is not whether the trier-of-fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. *Johnson v. Magitt*, 2012-0200 (La. App. 1st Cir. 9/21/12), 111 So.3d 11, 12.

**Guidry's Assignment of Error**

Guidry contends that the evidence established only Donaldson's belief about certain events, not what actually occurred, and was, therefore, insufficient to find her in contempt of court. She further asserts that the only potential violation of the mutual stay away order, following Donaldson on Instagram, was refuted by evidence showing the request was made when Guidry's account was "hacked." However, upon review of the record, it is evident that Guidry simply disagrees with the trial court's interpretation of the evidence.

5

Donaldson testified that in January 2021, the same month the parties perfected the mutual stay away order, her employer began receiving "[n]umerous hang up phone calls" from unknown or blocked numbers. After a call was answered, the unidentified caller hung up, without speaking. The IT department for Donaldson's employer investigated the calls but was unable to identify the caller(s). Donaldson confirmed that, prior to January 2021, her employer had not experienced this during her two and a half years of employment.

On February 13, 2021, Guidry began following Donaldson on Instagram. Donaldson introduced a screenshot into evidence that stated, "Michele Marie Follows you," and included a photograph of "Michele Marie." Also during this time, Donaldson began getting text messages from an unknown number, which referenced her divorce from McKinney and "the problems" between Guidry, McKinney, and Donaldson. Particularly, the evidence established that McKinney and Guidry had a relationship during McKinney's marriage to Donaldson, and the texts to Donaldson reference McKinney's infidelity. The texts also included personal details about Donaldson's life, health, and the court proceeding with Guidry, which Donaldson testified "a normal person outside of the scope of this situation would not have had privileged to know." Donaldson testified that she believes Guidry made the phone calls to her employer and sent the referenced text messages due to the timing of the calls and texts and the consistent use of blocked or unknown numbers.

Additionally, during this time, McKinney received numerous text messages from unknown or unidentified numbers concerning Donaldson, furthering Donaldson's belief that Guidry was responsible for the calls and texts. McKinney testified that Guidry sent him "literally hundreds" of messages from at least five different numbers, perhaps has many as ten. McKinney identified Guidry as the person who sent him a particular string of texts from an unidentified number. The text messages, which were introduced into evidence, included a screenshot of the

January 2021 mutual stay away order and referenced Donaldson. Several voice messages from Guidry to McKinney were also admitted into evidence. Guidry identified her voice on the messages, all of which focused solely on Donaldson. In one message, Guidry stated, "I'm not going to tell you to deliver a message to her but...," then proceeded to use threatening, aggressive language toward Donaldson. McKinney testified that he generally did not communicate Guidry's threats to Donaldson, but he did on one occasion in April 2021 due to the severity of the threat. Finally, McKinney testified that Guidry contacted him "[d]ozens of times" to give messages to Donaldson and believes that Guidry continues to contact him to harass Donaldson.

Guidry denied sending messages to Donaldson and calling her employer and introduced evidence to show that she was with patients when some of the calls were made to Donaldson's employer. Guidry also denied following Donaldson on Instagram and introduced a screenshot of her own Instagram login activity into evidence, which showed a login from an iPhone in Miami, Florida on February 14th. Guidry testified that her Instagram account was hacked and explained that she has never been to Miami and does not own an iPhone. Donaldson's counsel objected to the introduction of the login activity to the extent it was offered to confirm Guidry's contention that the login occurred from an iPhone in Miami. The trial court admitted the document but stated that it "would need an expert on IT to explain" because an IP address can be changed to "anyplace in the United States and you can call it whatever you want."

In its oral reasons for ruling, the trial court explained that McKinney helped "immensely" by identifying messages from numbers that Guidry claimed did not belong to her and confirming that he received multiple messages from Guidry from different numbers. The trial court concluded that Guidry was "manipulating things" to get Donaldson into trouble and to hurt McKinney, either directly or indirectly.

From these statements, it appears the court concluded that Guidry contacted Donaldson and her employer using unknown or unidentified numbers and that Guidry contacted Donaldson through a third party, McKinney. Finally, it appears the court found Guidry's evidence insufficient to establish that an unknown person hacked into her Instagram account and followed Donaldson.

The trial court was presented with conflicting evidence and testimony and was required to make credibility determinations and weigh evidence. In these situations, where factual findings are based on credibility determinations and where two permissible views of the evidence exist, the trial court's findings of fact demand great deference and are virtually never manifestly erroneous or clearly wrong. *Brown v. Terrebonne Parish Sheriff's Office*, 2017-1305, 2017-1306 (La. App. 1st Cir. 4/13/18), 249 So.3d 864, 871, *writ not considered*, 2018-00964 (La. 10/8/18), 253 So.3d 792; *Johnson*, 111 So.3d at 12. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Brown*, 249 So.3d at 871. After reviewing the record, particularly the above-cited testimony and evidence, we conclude that a reasonable factual basis exists for the trial court's factual findings. Thus, we find no abuse of discretion in the trial court's decision to hold Guidry in contempt of court.

**Donaldson's Request for Attorney Fees and Costs for Frivolous Appeal**

In her appellee brief, Donaldson requests an award of attorney fees and costs for Guidry's allegedly frivolous appeal. The proper procedure for an appellee to request frivolous appeal damages is to file either an answer to the appeal or a cross appeal. La. C.C.P. art. 2133; *Doe v. Lewis*, 2020-0320 (La. App. 4th Cir. 12/30/20), 312 So.3d 1165, 1180. Since a brief constitutes neither, an appellee cannot recover damages for taking a frivolous appeal if the damages are first requested in the

8

appellee's brief. *Id.* Therefore, the request for attorney fees is denied.[2]

**CONCLUSION**

For the foregoing reasons, we affirm the portion of the May 17, 2022 amended judgment finding Michele Guidry in contempt of court for violating conditions 1, 2, and 4 of the January 19, 2021 mutual stay away order and ordering Michele Guidry to pay $2,500.00 as provided for in the mutual stay away order to Rebecca Ann Donaldson, along with all court costs and attorney fees in the amount of $3,750.00. Rebecca Ann Donaldson's request for attorney fees pursuant to La. C.C.P. art. 2164 is denied. All costs of this appeal are assessed against appellant, Michele Guidry.

**AFFIRMED.**

---

[2] Additionally, we do not find that penalties for filing a frivolous appeal are warranted. Louisiana Code of Civil Procedure article 2164 provides that an appellate court may award damages, including attorney fees, for a frivolous appeal. Courts have been reluctant to grant damages under this article, as it is penal in nature and must be strictly construed. Because appeals are favored in our law, penalties for the filing of a frivolous appeal will not be imposed unless they are clearly due. To assess damages for a frivolous appeal, it must appear that the appeal was taken solely for the purpose of delay or that counsel does not sincerely believe in the view of law he advocates. *McCraney v. Doe*, 2017-0123 (La. App. 1st Cir. 9/21/17), 232 So.3d 57, 59. Neither of these criteria is satisfied here.